UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID MERRITT, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>JP MORGAN, et al.,<br><br>        Defendants. | Case No. 17-CV-06101-LHK<br><br>**ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN**<br><br>Re: Dkt. Nos. 58, 60, 62 |

Plaintiffs Salma and David Merritt ("Plaintiffs") sued JPMorgan Chase, N.A., Jamie Dimon,[1] David Gillis, Structured Asset Mortgage Investments II, Inc., John Costango, Aisling Desola, Specialized Loan Servicing, LLC, Tobey Wells, Ami McKernan, Michael Ward, Zieve Brodnax & Steele LLP, John Steele, Michael Busby, U.S. Bank N.A., Andrew Cecere, Bryan Cave, James Goldberg, David McCall, Beverly Brooks, Avi Marcus, Real Time Resolutions, and Eric Green (collectively, "Defendants"), asserting causes of action for accounting, violation of the

---

[1] The pleadings erroneously name "Jamie Dimond."

Fair Debt Collection Practices Act, RICO, common law fraud, violation of the Uniform Commercial Code, unjust enrichment, and deprivation of constitutional rights. Before the Court are three motions to dismiss the first amended complaint. Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS the motions to dismiss.

## I. BACKGROUND

### A. Factual Background

Plaintiffs obtained a home loan from Countrywide Financial Services ("CFC") in 2006, secured by a deed of trust against Plaintiffs' property in Sunnyvale, California. Request for Judicial Notice ("RJN"), ECF No. 58-1, Exh. A.[2] Plaintiffs stopped making payments on their loan in October 2008. FAC ¶ 29.

Plaintiffs sued CFC in March 2009 in the Northern District of California, alleging a range of claims including violations of the Truth in Lending Act, gender and race discrimination, state law fraud, and violations of the Fair Debt Collection Practices Act ("FDCPA"). *See Merritt v. Countrywide Fin. Corp.*, No. 09-cv-1179 ("*Merritt I*"). After the district court dismissed their case with prejudice, Plaintiffs refiled their state law claims in state court and appealed the district

---

[2] JPMorgan requests judicial notice of several court filings in other state and federal court cases filed by Plaintiffs, as well as the Pooling and Servicing Agreement for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2006-2, which JPMorgan downloaded from the SEC's website. *See* ECF No. 60-1. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, in the instant case, the Court only takes judicial notice of the filings for the purpose of assessing estoppel and limitations periods; the Court does not accept as true any of the disputed facts in the filings. Similarly, documents available on government websites are generally judicially noticeable. *See Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotation marks and alterations omitted)). As such, the Court GRANTS JPMorgan's request for judicial notice.

court's dismissal to the Ninth Circuit. *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-1179-BLF, 2015 WL 5542992, at *5 (N.D. Cal. Sept. 17, 2015); *Merritt v. Mozilo*, No. 109CV159993 (Cal. Sup. Ct.) ("*Merritt II*"). The Ninth Circuit reversed in part and remanded. *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1041 (9th Cir. 2014). Upon remand, the district court allowed Plaintiffs to amend their pleadings and eventually dismissed the case with prejudice. *Merritt I*, 2016 WL 6573989 (N.D. Cal. June 29, 2016). Plaintiffs' appeal in *Merritt I* is currently pending before the Ninth Circuit. *See Merritt v. Countrywide Fin. Corp.*, Case No. 16-16311; FAC ¶ 39.

Similarly, in state court, the trial court sustained defendants' demurrers in *Merritt II*, but the California Court of Appeal reversed in part and remanded on at least two appeals. *Merritt v. Mozilo*, No. H037414, 2013 WL 4942063 (Cal. Ct. App. Sept. 13, 2013); *Merritt v. Wells Fargo Bank, N.A.*, 2011 WL 6330596 (Cal. Ct. App. Dec. 19, 2011). Another appeal is currently pending before the California Court of Appeal. *See Merritt v. Mozilo*, No. H041560; FAC ¶ 39.

Plaintiffs devote almost 200 paragraphs of the FAC to describing a series of alleged conversations between Defendants and their unidentified employees between 2004 and 2014. Allegedly, these conversations were about Plaintiffs' loan and Defendants' alleged schemes to conceal fraud committed by Bear Stearns and to commit fraud on the various courts hearing *Merritt I* and *Merritt II*. *See* FAC ¶¶ 40-227. Plaintiffs also allege that Defendants conspired to record fraudulent assignments of Plaintiffs' deed of trust and to threaten Plaintiffs in an effort to collect on the fraudulent loan. *See, e.g., id.* ¶¶ 54-58, 81-82, 90-93, 100, 106.

Plaintiffs explain that they only recount events between 2006 and 2009 "for the purposes of background/historical facts in order to demonstrate motives or intents for the pattern of racketeering." *Id.* ¶ 1. Plaintiffs assert that their claim is based on events from 2010 through 2017 that transpired after the "alleged fraudulent 2006 origination, servicing[, and] 2009 modification of loans." *Id.* ¶¶ 2-3. The longest limitations period for Plaintiffs' asserted claims is four years, which applies to their RICO claims. *See Pincay v. Andrews*, 238 F.3d 1106, 1108-09 (9th Cir. 2001). Thus, the Court recounts Plaintiffs' allegations about events from October 2014 and after

3

in more detail than Plaintiffs' allegations about events that would be time-barred.

First, many of Plaintiffs' claims are premised on their underlying allegation that there was fraud or other defects in the securitization and assignments of their note. Specifically, Plaintiffs allege that CFC sold their note to "Bear Stearns ARM trust, mortgage pass-through certificates, series 2006-2." FAC ¶ 43. Plaintiffs allege on information and belief that the original endorsed note was never delivered to the custodian of the trust, "making it void under California [law] and [the Uniform Commercial Code]." *Id.* Plaintiffs allege that in each year between 2009 and 2017, they "called and sent letters to CFC, BofA, Bryan Cave, Recontrust, SLS and ultimately US Bank, JP Morgan, Zieve, Brodnax and Steele and their respective[] CEOs and Board of Directors for a copy of the endorsed note and proof that it along with the Deed of Trust assignment was actually delivered to" the Bear Stearns trust. *Id.* ¶ 47. Plaintiffs allege that until September 2017, Defendants told Plaintiffs that they could not locate the original note, but in September 2017 Defendants claimed to have the original note. *Id.* ¶ 48.

Plaintiffs allege that Dimon and the JPMorgan board knew that Plaintiffs' mortgage was based on unspecified fraud and, wanting to distance themselves from the fraud, Dimon and the JPMorgan board arranged in April and May 2011 for US Bank to become Trustee on the Deed of Trust. *Id.* ¶¶ 50-51, 56, 125-131. Somehow Bank of America allegedly became involved, and Plaintiffs allege that Bank of America falsified a reassignment of Deed of Trust naming US Bank as Trustee and recorded the reassignment with Santa Clara County in May 2011. *Id.* ¶¶ 55-58, 135-46. Plaintiffs allege that these actions were the formation of the "JP Morgan-SLS Enterprise" for the purposes of their civil RICO claim. *See id.* ¶¶ 119-20.

The most recent alleged conspiracy concerned a plan "to threaten and intimidate the plaintiffs into paying an unlawful debt (produced through falsification of county records) by presenting Plaintiffs with a claim to collect debt based on an assignment of deed of trust which was falsified in May 2011; a fraudulent modification agreement which is void as of February 2009 and produced by fraud as well as the December 2016 substitution of trustee." FAC ¶ 248. The

4

conspiracy began in November 2016, when Defendant Goldberg allegedly:

> placed a call from his San Francisco office to Defendant Gillis and other[s] and informed them that he believed that since he was successful in obstructing Plaintiffs['] state and federal case[s] that[] they are still trying to pursue them through appeals and may very well succeed again, and he believed that it was now time for JP Morgan to threaten and intimidate Plaintiffs with debt collection in a more forceful way to not only intimidate and threaten them but as punishment for being so tenacious on their claims and for refusing to dismiss their cases against these and other defendants in state and federal courts.
>
> …
>
> On or about December 2016, Gillis spoke with Dimond in his office, explaining Goldberg's idea to threaten and intimidate Plaintiffs by actually pursuing foreclosure against them versus merely threatening them with such and Dimond told Gillis that he agreed with this idea, then told Gillis for him and other Unknown GCs [to] implement the idea by contacting US Bank, SAMI and SLS counterparts asking each if they would do this for JP Morgan in exchange for certain compensation.
>
> …
>
> Continuing on information and belief, Cecere told the Unknown GC in December 2016, in his office that he agreed with the idea and to inform Gillis to tell Dimond that he would initiate foreclosure proceedings against the Plaintiffs based on the falsified Assignment and fraudulent mortgage; but he informed Dimond that MERS did not actually have the authority to transfer trusteeship to US Bank in 2011 and MERS was only the nominee without any interest in Plaintiffs['] mortgage.
>
> …
>
> On or about December 22, 2016, Defendant Mckernan told Steele, based on information and belief, that she agreed to implement the plan and threat [*sic*] she me[t] with Defendant Ward in his office, explaining Goldberg and Dimond's plan and ask[ed] if he were willing to falsify a Substitution of Trustee to give the appearance that he was a legitimate employee of US Bank making the substitution; portraying US Bank as a legitimate trustee for the Bear Stearns trust, although it was not, and substitute Zieve Brodnax & Steele in its place so that he, Mckernan and Wells can have them foreclos[e] on Plaintiffs['] property in order to punish them for their litigation.

FAC ¶¶ 228, 230, 232, 244.

Plaintiffs allege that Defendants Ward and McKernan falsified a substitution of trustee in late December 2016 in order to proceed with foreclosure on Plaintiffs' home. *Id.* ¶¶ 246-47. JPMorgan then "directed US Bank to target the Plaintiffs for debt collection by directing Wells and SLS to resume sending notices to them for payment of mortgage which CFC and BofA

Case No. 17-CV-06101-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

waived standing on [*sic*] to collect after eight years of Plaintiffs refusing to make payments until they corrected the fraud which was committed against them." *Id.* ¶ 249.

Plaintiffs do not allege any specific notices or communications that they received from any of the Defendants, but Plaintiffs do generally refer to SLS contacting Plaintiffs on or before June 2017. *Id.* ¶ 250. Plaintiffs allege that in July 2017, Defendants Dimon, Desola, Gillis, and Costango decided to proceed with foreclosure. *Id.* ¶ 252. Defendants Steele, Zieve, and Busby then filed a Notice of Default and Election to Sell Under Deed of Trust with Santa Clara County. *Id.* ¶ 258.

Plaintiffs conclude that:

Defendant Dimond, through JP Morgan corporate authority, based on information and belief, entered into secret agreements in each year 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2018 [*sic*] and 2018, with SAMI, Bryan Cave, BofA, US Bank, MERS, SLS and other business to conceal JP Morgan, its board and employees from being identified as having involvement in fraudulent mortgages and to support the falsification of county recorded instruments in order to strip income, savings, equity and property from those borrowers, as the Plaintiffs, who CFC and Bear Sterns had defrauded; as well as to evade liability for such fraudulent activities.

*Id.* ¶ 259.

## B.    Procedural History

Plaintiffs, proceeding pro se, filed this case on October 25, 2017. ECF No. 1. On November 14, 2017, one of the defendants declined magistrate judge jurisdiction, and this case was reassigned to the undersigned judge. ECF Nos. 16, 18. Also on November 14, 2017, Defendants Real Time Resolutions, Inc. and Eric Green (collectively, "Real Time Resolutions"), filed a motion to dismiss. ECF No. 15. On December 22, 2017, Defendants JPMorgan Chase Bank, N.A and Structured Asset Mortgage Investments II, Inc. (collectively, "JPMorgan"), filed a motion to dismiss. ECF No. 20. On December 26, 2017, Defendants Specialized Loan Servicing, LLC Toby Wells, Ami McKernan, U.S. Bank National Association, and Andrew J. Cecere (collectively, "SLS"), filed a motion to dismiss. ECF No. 23. On January 8, 2018, Real Time

6

1    Resolutions filed an amended motion to dismiss.  ECF No. 26.  On January 16, 2018, Plaintiffs

2    filed their first amended complaint ("FAC").  ECF No. 29.

3            On January 30, 2018, the Court determined that under Rule 15(a), Plaintiffs' FAC

4    qualified as an amendment as of right in relation to SLS's amended motion to dismiss, because the

5    FAC was filed within the 21 day limit.  ECF No. 57 at 2.  However, the Court determined that

6    Plaintiffs' FAC was not an amendment as of right in relation to Real Time Resolutions or

7    JPMorgan because the FAC was filed over 21 days after these defendants filed their motions to

8    dismiss.  Nonetheless, the Court stated that "Plaintiffs are proceeding pro se, which means the

9    Court must liberally construe Plaintiffs' pleadings and arguments.  The Court therefore construes

10   the FAC as including an implicit request for leave to amend the initial complaint, and GRANTS

11   Plaintiffs' request for leave to amend the initial complaint."  *Id.*

12           On January 30, 2018, JPMorgan filed a motion to dismiss the FAC.  ECF No. 58.

13   Plaintiffs' opposition was due by February 13, 2018.  *Id.*  On January 31, 2018, Desola and Dimon

14   filed a motion to dismiss.  ECF No. 60.  Plaintiffs' opposition was due on February 14, 2018.  *Id.*

15   On February 6, 2018, Real Time Resolutions and SLS filed motions to dismiss.  ECF Nos. 62, 63.

16   Plaintiffs' oppositions were due on February 20, 2018.  *Id.*  Also on February 6, 2018, Plaintiffs

17   voluntarily dismissed Real Time Resolutions pursuant to Federal Rule of Civil Procedure

18   41(a)(1)(a)(i).[3]  ECF No. 64.

19           On February 15, 2018, after two of the deadlines for filing oppositions had passed,

20   Plaintiffs filed an administrative motion for an extension of time to oppose the motions to dismiss.

21   ECF No. 70.  On February 21, 2018, the defendants opposed Plaintiffs' administrative motion.

22   ECF Nos. 72, 74.  On February 23, 2018, the Court denied Plaintiffs' administrative motion, ECF

23   No. 80, and granted the motion to continue the Rule 26(f) conference and stay discovery, ECF No.

24   83.

25

26   _____

[3] The Court thus DENIES Real Time Resolutions' motion to dismiss, ECF No. 62, as moot.

27
                                                          7
28   ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET
     MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION
     TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

On March 6, 2018, Plaintiffs filed a motion for recusal pursuant to 28 U.S.C. § 455. ECF No. 87. Plaintiffs asserted seven grounds for recusal: (1) the Court's denial of Plaintiffs' administrative motion for an extension of time; (2) the allegation that there are four JPMorgan Chase accounts registered in the name of "Lucy Koh"; (3) the Court's "admonish[ing] Plaintiffs for exercising their right to amend without leave of court prior to the defendants filing a bona fide answer to action"; (4) Defendants' request for judicial notice of filings in other cases filed by Plaintiffs in state and federal court, which Plaintiffs contend are irrelevant to the instant case;[4] (5) the allegation that the Court accepted as true the documents in the request for judicial notice, allegedly demonstrated by the Court's denial of Plaintiffs' administrative motion for an extension of time; (6) the Court's denial of Plaintiffs' request for ECF access; and (7) the Court's sua sponte referral to Judge Freeman for purposes of determining the relationship of the instant case to Case No. 09-CV-1179-BLF.

On March 7, Plaintiffs filed an administrative motion to file their opposition past the deadline. ECF No. 85.

On March 9, 2018, the Court denied both the administrative motion and the recusal motion. ECF No. 89. The Court explained that "Plaintiffs' core rationale for recusal is that the Court has not ruled in Plaintiffs' favor on motions, but Plaintiffs cite no authority holding that a litigant's disagreement with a Court's ruling is grounds for recusal." *Id.* at 1. The Court also explained that "Plaintiffs have been litigating variations of this same action since at least March 18, 2009, almost nine years. Given this backdrop, the Court does not find that an extension is warranted." *Id.* at 1-2 (citation omitted).

On April 3, 2018, Plaintiffs filed a Certified Affidavit Under 28 U.S.C. § 144 of Bias or

---

[4] JPMorgan filed a request for judicial notice on December 22, 2017, in which it requested that the Court take judicial notice of a range of filings in other cases brought by Plaintiffs in state and federal court. ECF No. 20-1. The Court infers that this is what Plaintiffs were referencing when Plaintiffs alleged that the Court "accepted, without opposition, filings by the defendants which not only have no relevancy to this actual action, but are wholly extraneous to complaint and improper for consideration by the Court since they are not part of complaint." ECF No. 87 at 2.

8

Prejudice against the undersigned judge. ECF No. 100. The Court resolves that motion in a concurrently filed order.

On April 11, 2018, Bryan Cave LLP and Goldberg filed motions to dismiss and strike the FAC. ECF Nos. 103, 104.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citing 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (3d ed. 2002 & Supp. 2003)). "[N]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (brackets omitted).

Federal Rule of Civil Procedure 4(e) governs service of individuals within a judicial district of the United States. Fed. R. Civ. P. 4(e). Pursuant to that rule, service may be effectuated by "following state law for servicing a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made." *Id.* Rule 4(e) permits three additional methods of service: (1) delivering copies of the summons and complaint to the individual personally; (2) leaving copies of the summons and complaint at the individual's dwelling; and (3) delivering copies of the summons and complaint to an agent authorized to receive service. *Id.*

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is

9

filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." In addition, Rule 12(b)(5) provides a defense for insufficient service of process.

**B.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe [s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

10

## C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

### A. Defendants Dimon and Desola Have Not Been Properly Served Under Rule 4

As discussed above, Rule 4 provides several acceptable methods of service of the summons and complaint. First, service may be effectuated by "following state law for servicing a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Thus, the Court must examine the laws of California and New York to determine what constitutes effective service under those states' laws.

Under California law, service may be effectuated through personal delivery, Cal. Code Civ. P. § 415.10, leaving copies of the summons and complaint at the person's office during normal office hours, Cal. Code Civ. P. § 415.20(a), or leaving copies at the usual mailing address with a person at least 18 years of age and then mailing another copy to the same address, *id.* In addition, California law provides for service by mail for in-state recipients if the recipient returns a signed acknowledgement of receipt of summons. Cal. Code Civ. P. § 415.30; *Bolkiah v. Superior*

11

*Court*, 74 Cal. App. 4th 984, 1000 (1999) ("Effective service on a defendant within California requires a signed receipt of the summons and complaint."). Under this method, service is considered complete on the date the receipt is executed. Cal. Code Civ. P. § 415.30 cmt.; *see also Bd. of Trustees of the Leland Stanford Junior Univ. v. Ham*, 216 Cal. App. 4th 330, 337 (2013). For out-of-state recipients, California law permits service "by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." Cal. Code Civ. P. § 415.40. "Service of a summons by this form of mail is deemed complete on the 10th day after such mailing." *Id.*

Unlike in-state recipients, "with service by mail on a defendant outside the state, no executed acknowledgement of receipt is required." *Bolkiah*, 74 Cal. App. 4th at 1000 (citing *Johnson & Johnson v. Superior Court*, 38 Cal. 3d 243, 254-55 (1985)). However, the California Court of Appeal has held that "[p]roof of service by mail on out-of-state defendants must nevertheless strictly comply with the requirements of Code of Civil Procedure section 417.20, subdivision (a)." *Id.* at 1001 (citing *Stamps v. Superior Court*, 14 Cal. App. 3d 108, 110 (1971)). "This section provides if service is made by mail on an out-of-state defendant[,] 'proof of service shall include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed receipt *or other evidence.*'" *Id.* (quoting Cal. Code Civ. P. § 417.20(a)) (emphasis in original). "California courts have held that the statutory provisions regarding service of process require only substantial compliance and 'should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant.'" *Watts v. Enhanced Recovery Corp.*, No. 10-CV-2606-LHK, 2010 WL 3448508, at *4 (N.D. Cal. Sept. 1, 2010) (quoting *Dill v. Berquist Construction Co.*, 24 Cal.App.4th 1426, 1436 (Ct. App. 1994)). "However, 'no California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service.'" *Id.* (quoting *Summers v. McClanahan*, 140 Cal.App.4th 403, 414 (Ct. App. 2006)). Thus, failure to comply "with all

12

United States District Court
Northern District of California

statutory requirements . . . deprives a court of jurisdiction to act." *Lee v. Placer Title Co.*, 28 Cal. App. 4th 503, 509 (1994).

New York law allows substantially the same types of service that California law allows for in-state recipients. Specifically, New York law permits service on a natural person by personal delivery; by delivery to a person of suitable age at the recipient's actual place of business or home and subsequently mailing copies by first class mail to the recipient's business or home address; or by affixing the summons to the door of either the actual place of business or home and subsequently mailing copies to the recipient's business or home address. *See* N.Y. C.P.L.R. § 308. In addition, New York law permits service by first class mail of the summons, complaint, statement of service by mail, and acknowledgement of receipt form. *See* N.Y. C.P.L.R. § 312-a. "The effectiveness of service under CPLR 312-a depends upon the defendant's willingness to return a signed 'acknowledgement of receipt,' which is one of the forms that must accompany the process. If the defendant refuses to return such acknowledgement within 30 days of receipt of the mailed process, the plaintiff must serve process anew, using one of the traditional methods of service." Vincent C. Alexander, *Practice Commentaries*, N.Y. C.P.L.R. § 312-a.

Rule 4(e) permits three additional methods of service: (1) delivering copies of the summons and complaint to the individual personally; (2) leaving copies of the summons and complaint at the individual's dwelling; and (3) delivering copies of the summons and complaint to an agent authorized to receive service. *Id.* Like California law for in-state recipients and New York law, Rule 4(d) also permits plaintiffs to mail the summons and complaint via first-class mail, along with a notice and form waiving personal service. Fed. R. Civ. P. 4(d). Also like California law for in-state recipients and New York law, this type of service "fails unless the defendant returns the signed acknowledgement form." *Worrell v. B.F. Goodrich Co.*, 845 F.2d 840, 841 (9th Cir. 1988).

In the instant case, Plaintiffs filed their original complaint on October 25, 2017 and the relevant summonses were issued that same day. ECF Nos. 1, 4, 14. On January 18, 2018,

13

Case No. 17-CV-06101-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

Plaintiffs filed proofs of service for Defendants Dimon and Desola. ECF Nos. 48 (Desola), 51 (Dimon). Both proofs of service were dated October 26, 2017 and signed by Marreon G. Starks. ECF Nos. 48, 51. The proof of service for Desola states, "I mailed via U.S. Mail priority Mail the summons, two waiver of service of summons forms, self addressed prepaid return envelop [*sic*] and copy of lawsuit cv176101 HRL to AISLING DESOLA 4CHASE METROTECH CENTER, FLOOR 22, BROOKLYN NY 11245." ECF No. 48. The proof of service for Dimon states, "I mailed via U.S. Mail priority Mail the summons, two waiver of service of summons forms, self addressed prepaid return envelop [*sic*] and copy of lawsuit cv176101 HRL to JAMIE DIMOND 270 PARK AVE, NEW YORK, NY 10017." ECF No. 51. There is no evidence that either Desola or Dimon returned an executed waiver of service or acknowledgement of receipt. Nor is there evidence that Plaintiffs attempted to or actually did serve either Desola or Dimon through any other means. It is thus clear that Plaintiffs have not properly served Desola or Dimon under New York law or under the methods enumerated in Federal Rule of Civil Procedure 4. *See* N.Y. C.P.L.R. §§ 308, 312-a; Fed. R. Civ. P. 4(d), (e)(2).

However, as discussed above, California Code of Civil Procedure permits service upon out-of-state recipients "by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." Cal. Code Civ. P. § 415.40. If effectuating service under § 415.40, a plaintiff then must file a "proof of service [that] include[s] evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed receipt or other evidence." Cal. Code Civ. P. § 417.20(a). Here, the proofs of service show that the summonses, complaint, and waiver forms were sent via U.S. Priority Mail. ECF Nos. 48, 51. The question, then, is whether Plaintiffs' proofs of service sufficiently establish actual delivery to Desola and Dimon such that § 417.20(a) is satisfied.

California courts and federal courts interpreting California have found that a certified mail receipt showing delivery or a signed return receipt are sufficient evidence of actual delivery under § 417.20(a). *See, e.g., Intelepeer Cloud Commc'ns, LLC v. Explore Travels, Corp.*, No. 16-cv-

14

01255-DMR, 2016 WL 4699731, at *3 (N.D. Cal. Aug. 19, 2016) ("Service was accomplished at these addresses as evidenced by return of certified United States Mail receipts by recipients at those delivery addresses."), *report and recommendation adopted*, 2016 WL 4611429 (N.D. Cal. Sept. 6, 2016); *Victoriano v. Classic Residence Mgmt., LP*, No. 14cv2346-LAB (JLB), 2015 WL 3751984, at *2 (S.D. Cal. June 15, 2015) ("A sworn affidavit and signed return receipt may provide satisfactory proof of actual delivery."); *Cruz v. Fagor Am., Inc.*, 146 Cal. App. 4th 488, 498 (2007) ("Cruz also submitted a signed return receipt to establish the fact of actual delivery."). However, where "the record contains no evidence the summons and pleading . . . were actually delivered" to the correct recipient, courts have found that the requirements of § 417.20(a) were not met. *In re Marriage of Cerrato*, No. G051775, 2017 WL 5951712, at *5 (Cal. Ct. App. Dec. 1, 2017); *see also Evans v. Nationstar Mortg., LLC*, No. 2:15-cv-1213 JAM GGH PS, 2015 WL 6756255, at *4 (E.D. Cal. Nov. 5, 2015) (finding service ineffective where record lacked evidence that mailed service was addressed to proper recipient or that the correct address was used and no signed return receipt was filed to establish actual delivery); *Gold v. Medartis, Inc.*, No. CV 15-3203 DMG (PLAx), 2015 WL 4208468 at *4 (C.D. Cal. July 10, 2015) (finding requirements for proof of service not satisfied where the plaintiff did not receive a signed return receipt and did not otherwise produce evidence establishing actual delivery); *Mannarino v. Fay Servicing LLC*, No. 2:15-cv-2409-ODW(PLAx), 2015 WL 12662334, at *1 (C.D. Cal. June 2, 2015) (declarations that the plaintiffs sent documents using regular mail were not sufficient proofs of service); *Watts*, 2010 WL 3448508 at *4 (finding service did not substantially comply with statutory requirements where the plaintiff did not allege that the mailed summons and complaint were actually received by an individual authorized to receive service of process).

Consistent with these cases, the Court finds that the proofs of service for Desola and Dimon do not satisfy § 417.20(a). Plaintiffs have not filed a signed return receipt, nor does it appear that their process server requested a signed return receipt apart from including waiver forms in the mailed package. Plaintiffs have offered no other evidence, such as a certified mail

Case No. 17-CV-06101-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

confirmation of delivery, that either Desola or Dimon actually received the summonses and complaint. In this situation, the Court concludes that § 417.20(a) has not been satisfied. *See In re Marriage of Cerrato*, 2017 WL 5951712 at *5; *Evans*, 2015 WL 6756255 at *4. Thus, because service of process was not effectuated in a manner permitted by Rule 4 or the laws of California or New York, the Court GRANTS Desola and Dimon's motion to dismiss the FAC as to them pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(5). This dismissal is without prejudice. *See* Rule 4(m).

**B.  JPMorgan's Motion to Dismiss Under Rule 12(b)(6)**

JPMorgan asserts multiple grounds for dismissing each of Plaintiffs' claims. First, JPMorgan asserts that Plaintiffs' entire action is barred by claim preclusion based on *Merritt I*, which was filed in 2009. Mot. at 12-13. This doctrine operates to bar relitigation of previously litigated claims, as well as any claim that "could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Here, although many of the allegations underlying Plaintiffs' complaint could have been raised in earlier proceedings, the claims at issue in the FAC also are based on acts that were alleged to have taken place from 2011 to 2017. *See* FAC ¶¶ 135-259. As a result, claims based on those alleged facts could not have been raised in the earlier actions, and so claim preclusion does not apply. The Court thus addresses the claims in the order in which Plaintiffs plead them.

**1.  Accounting Claim**

"An action for an accounting is equitable in nature. It may be brought to compel the defendant to account to the plaintiff for money or property, (1) where a fiduciary relationship exists between the parties, or (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." 5 Witkin, Cal. Procedure (5th ed. 2008) Accounting, Nature of Action § 819. "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is *due the plaintiff* that can only be ascertained by

16

United States District Court
Northern District of California

an accounting." *Starcevic v. Chase Home Fin., LLC*, No. D061064, 2013 WL 3808991, at *4 (Cal. Ct. App. July 22, 2013) (quoting *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009)) (emphasis added in *Starcevic*). A "complaint does not state a cause of action for an accounting where it shows on its face that none is necessary; i.e., where the plaintiff alleges a right to recover a sum certain or a sum that can be made certain by calculation." 5 Witkin, Cal. Procedure, *supra*, Accounting, Elements of Cause of Action, § 820; *accord Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) ("An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." (quoting *Teselle*, 173 Cal. App. 4th at 179)).

Plaintiffs' accounting claim alleges, in full, that "Defendants have secretly and fraudulently made it appear in public records that JP Morgan has no interest in Plaintiffs['] mortgage and orchestrated for SAMI to hold itself out as the actual 'Creditor' which is a wholly owned subsidiary of JP Morgan." FAC ¶ 260. Plaintiffs allege that "[t]he amount of money paid by Plaintiffs and claimed to be owed by them is unknown and cannot be determined without an accounting from the actual, not pretended, Creditor who is the holder-in-due-course." *Id.* ¶ 261. "JP Morgan should be ordered to provide a full written accounting of all sums allegedly due under the terms of the alleged original written contract, its proof of ownership of such Note/mortgage, an explanation of each amount due, and an accounting of all sums allegedly paid from alleged Servicers to JP Morgan on the alleged debt." *Id.* ¶ 262.

Plaintiffs fail to state a claim for an accounting for several reasons. First, Plaintiffs fail to allege that JPMorgan owes them money, which is a necessary element to state a claim for an accounting. *See Teselle*, 173 Cal. App. 4th at 179. California courts regularly dismiss accounting claims where the plaintiff does not allege that he or she is owed money, even when the plaintiff alleges other irregularities in how the defendant has credited or accounted for the plaintiff's payments. *See Abuan v. Nationstar Mortg. LLC*, No. E061047, 2015 WL 5423818, at *4 (Cal. Ct. App. Sept. 15, 2015) ("Plaintiffs do not allege that defendant owes them money, and therefore

17

they did not state a claim for an accounting."); *Carrasco v. HSBC Bank USA, N.A.*, No. H039841, 2015 WL 1321713, at *13 (Cal. Ct. App. Mar. 23, 2015) (dismissing claim for an accounting because the plaintiffs did not allege that the defendants owed them any money, even though the plaintiffs did allege "mischarges"); *Starcevic*, 2013 WL 3808991 at *4 (affirming trial court's sustaining of demurrer without leave to amend because "there is and can be no allegation of a balance owed to Starcevic on the subject loan account"). Nor have Plaintiffs alleged that they ever paid JPMorgan or SAMI any money. In fact, Plaintiffs have not alleged that they have paid any Defendants anything since October 2008, *see* FAC ¶ 29, which makes it exceedingly unlikely that JPMorgan owes Plaintiffs any money, given that Plaintiffs presumably now owe ten years' worth of payments. Thus, Plaintiffs' claim for an accounting fails because Plaintiffs have not alleged all elements necessary to state an accounting claim.

Second, even if Plaintiffs' "pursuit of this action were to result in a net amount owing to [them], . . . it would not be a balance due to [them] on [their] loan account that could only be ascertained by an accounting; it would be the result of an award of damages." *Starcevic*, 2013 WL 3808991, at *4. Specifically, at two points in the FAC Plaintiffs allege in passing that they paid more than $140,000 in "fraudulent loan payments" that did not go toward the principal of the loan. FAC ¶¶ 3, 86. Plaintiffs do not explain these allegations in any more detail. Plaintiffs also allege that they have been charged more than $14,000 in "falsified overcharges," but Plaintiffs do not specify whether they have paid these charges. *Id.* ¶ 86. To the extent that Plaintiffs might recover any such payments, that would be as an award of damages related to their fraud cause of action. In such a case, where any money owed to Plaintiffs would be a result of damages, California courts have dismissed separate claims for an accounting. *See Koshak v. 10675 S. Orange Park Boulevard, LLC*, Nos. G051652, G052407, 2017 WL 5776654, at *7 (Cal. Ct. App. Nov. 29, 2017); *Fleet*, 229 Cal. App. 4th at 1414; *Starcevic*, 2013 WL 3808991, at *4.

Finally, to the extent that these allegedly "fraudulent loan payments" and "falsified overcharges" constitute the basis for Plaintiffs' accounting claim, the claim fails for the additional

18

reason that "[a]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain." *Fleet*, 229 Cal. App. 4th at 1413 (quoting *Teselle*, 173 Cal. App. 4th at 179)).

Accordingly, the Court GRANTS JPMorgan's motion to dismiss the accounting claim for failure to state a claim. Because the Court concludes that affording leave to amend would be futile in these circumstances for the reasons discussed above, this dismissal is with prejudice. *See Starcevic*, 2013 WL 3808991, at *4 (affirming dismissal without leave to amend); *Leadsinger*, 512 F.3d at 532.

### 2. Fair Debt Collection Practices Act Claim

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, "was enacted 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1031 (9th Cir. 2009) (quoting 15 U.S.C. § 1692(e)). "The FDCPA regulates the collection of 'debts' by 'debt collectors' by regulating the number and type of contacts a debt collector may make with the debtor." *Id.* "For the purposes of the FDCPA, the word 'debt' is synonymous with 'money.'" *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 572 (9th Cir. 2017) (citing 15 U.S.C. § 1692a(5)). The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). "Further, a 'creditor' is not a 'debt collector' under the FDCPA." *Rowe*, 559 F.3d at 1031.

"In order to state a claim under the FDCPA, a plaintiff must show: 1) that he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the

19

ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA." *Datta v. Asset Recovery Solutions, LLC*, 191 F. Supp. 3d 1022, 1028 (N.D. Cal. 2016) (quoting *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011)); *see also Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013) ("the complaint must plead factual content that allows the court to draw the reasonable inference that [the defendants are] debt collector[s]" (internal quotation marks omitted). In the instant case, JPMorgan asserts several grounds for dismissing Plaintiffs' FDCPA claim: (1) the FDCPA claim is time-barred; (2) Plaintiffs have not adequately alleged that JPMorgan or SAMI were "debt collectors" within the meaning of the FDCPA; (3) Plaintiffs have not plausibly alleged that the debt was voided; and (4) Plaintiffs failed to allege that JPMorgan, Bear Stearns, and/or SAMI "took any action to collect any debt from them at any time, or in any manner." Opp'n at 11, 20-21.

A claim under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiffs filed the first complaint in this case on October 25, 2017. ECF No. 1. Thus, any allegations related to debt collection where the conduct occurs before October 25, 2016 are time-barred. The Court therefore GRANTS JPMorgan's motion to dismiss the FDCPA claim with prejudice insofar as the claim is premised on alleged conduct occurring before October 25, 2016. *See, e.g.*, FAC ¶¶ 181-82 (allegations about agreement between US Bank and Defendant Gillis and SLS in December 2012 "to intimidate and threaten the Plaintiffs with foreclosure"). However, some of Plaintiffs' allegations related to debt collection concern conduct after October 25, 2016. *See, e.g.*, *id.* ¶ 249 (alleging that JPMorgan directed US Bank to collect Plaintiffs' debt during the period of January 2017 to August 15, 2017). Thus, the Court proceeds to address JPMorgan's other arguments as to the allegations of conduct occurring after October 25, 2016.

JPMorgan next argues that Plaintiffs have not adequately alleged that JPMorgan or SAMI are "debt collectors" within the meaning of the FDCPA. Opp'n at 20. In *Schlegel*, 720 F.3d 1204, the Ninth Circuit considered what a plaintiff must allege to establish that a defendant is a debt

20

collector within the meaning of the FDCPA. Once again, "[t]he FDCPA defines the phrase 'debt collector' to include: (1) 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,' and (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Id.* at 1208 (quoting 15 U.S.C. § 1692a(6)). The plaintiffs in *Schlegel* alleged that Wells Fargo met the first definition of "debt collector" because "Wells Fargo is in the business of collecting debts and uses instrumentalities of interstate commerce in that business." *Id.* The plaintiffs conceded that they did "not expressly state that the 'principal purpose' of Wells Fargo's business is debt collection," but they argued that they "'invoked' this concept." *Id.* at 1208-09. The Ninth Circuit rejected this argument. The Ninth Circuit reasoned: "The complaint fails to provide any factual basis from which we could plausibly infer that the principal purpose of Wells Fargo's business is debt collection. Rather, the complaint's factual matter, viewed in the light most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA." *Id.* at 1209. In addition, because the plaintiffs did not allege that Wells Fargo was collecting debt on behalf of anyone else, the Ninth Circuit held that the plaintiffs had not adequately alleged that Wells Fargo met the second definition of "debt collector." *Id.* at 1209-10.

Here, like *Schlegel*, Plaintiffs have not sufficiently alleged that JPMorgan, Bear Stearns, or SAMI were debt collectors within the meaning of the FDCPA. Plaintiffs allege that JPMorgan is a corporation, is the parent company of SAMI, and conducted "thousands of business transaction[s]" during the relevant time period. FAC ¶ 5. Plaintiffs allege that Bear Sterns was a corporation that conducted business in California. *Id.* ¶ 4. Plaintiffs allege that SAMI "operated as a front company for JP Morgan to conceal or evade direct scrutiny of the fraudulent mortgage loans which JP Morgan Board of Directors registered under its name." *Id.* ¶ 6. Plaintiffs also allege that JPMorgan and SAMI conspired "to threaten and intimidate the Plaintiffs into paying an unlawful debt," *id.* ¶ 248, but Plaintiffs do not allege that the principal purpose of either JPMorgan

21

or SAMI is debt collection. Nor do Plaintiffs allege that JPMorgan or SAMI "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under *Schlegel*, Plaintiffs have thus failed to state an FDCPA claim. Having so concluded, the Court need not reach JPMorgan's other arguments. Accordingly, the Court GRANTS JPMorgan's motion to dismiss the FDCPA claim. However, because Plaintiffs could possibly amend their complaint to allege that JPMorgan or SAMI are debt collectors within the meaning of the FDCPA, the Court grants Plaintiffs leave to amend.

### 3. Civil RICO Claims

Plaintiffs allege that defendants have violated two provisions of RICO. First, they allege violation of 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Second, they allege violation of 18 U.S.C. § 1962(d), which provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted)). A "'pattern of racketeering activity' requires at least two acts of racketeering activity" within a ten-year period, which are referred to as predicate acts. 18 U.S.C. § 1961(5). The statute defines "racketeering activity," in turn, as either "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance," or "any act which is indictable under any of" a list of certain sections of Title 18 of the United States Code. § 1961(1). The list of indictable acts includes activities related to bribery, counterfeiting, embezzlement, extortion, mail fraud, bank fraud, obstruction of

22

justice, and criminal copyright infringement, among others.  The statute defines "unlawful debt" as:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).

When the predicate acts sound in fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply.  *See Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557-58 (9th Cir. 2010).  "Accordingly, Plaintiff[s] must plead with particularity the time, place, and manner of each act of fraud, as well as the role of each defendant in each scheme" if the predicate acts sound in fraud.  *Tapang v. Wells Fargo Bank, N.A.*, No. CV-12-2183-LHK, 2012 WL 3778965, at *3 (N.D. Cal. Aug. 30, 2012).

Plaintiffs' § 1962(c) claim alleges that the JPMorgan-SLS Enterprise engaged in a pattern of racketeering.  FAC ¶ 274.  Plaintiffs also allege that "Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an 'enterprise', with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents."  *Id.* ¶ 277.

Elsewhere in the FAC, Plaintiffs allege that JPMorgan and SAMI, with the other defendants, "communicated from their respective business offices with one another through the telephone, emails, faxes in order to devise a plan[] to conspire[] to threaten and intimidate the Plaintiffs into paying an unlawful debt (produced through falsification of county records) by presenting Plaintiffs with a claim to collect debt based on an assignment of deed of trust which was falsified in May 2011; a fraudulent modification agreement which is void as of February 2009

23

ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

and produced by fraud as well as the December 2016 substitution of trustee." *Id.* ¶ 248.

JPMorgan argues that to the extent Plaintiffs' RICO claim is based on alleged fraud in the origination of the loan, such claims are time-barred. Opp'n at 7-9. JPMorgan also argues that Plaintiffs fail to state a RICO claim because Plaintiffs have not identified the purported racketeering activities underlying the RICO claims. *Id.* at 17-18.

JPMorgan is correct that Plaintiffs have not specified which of the alleged actions by JPMorgan and SAMI qualify as predicate acts.[5] Courts have dismissed RICO claims where it is not clear from the complaint on which acts the plaintiffs base their RICO claim. *See, e.g.*, *Patel v. U.S. Bank, N.A.*, No. C 13-748 PSG, 2013 WL 3770836, at*8 (N.D. Cal. July 16, 2013) ("Is the RICO claim based on the allegedly fraudulent omission regarding the securitization of the loan or is it based on alleged misrepresentations about the proper beneficiary of the loan? The complaint does not provide the answer."); *McColm v. Anber*, No. C 06-7369 PJH, 2006 WL 3645308, at *6 (N.D. Cal. Dec. 12, 2006) ("Nor has the plaintiff identified the predicate racketeering acts."). To the extent Plaintiffs intend paragraph 248 of the FAC to describe the predicate act of collection of an unlawful debt, Plaintiffs' claim fails because the debt at issue is not "unlawful debt" within the meaning of 18 U.S.C. § 1961(6), which only includes unlawful gambling debts and usurious loans. *See* 18 U.S.C. § 1961(6); *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 665-66 (9th Cir. 1988) (allegation that debt was unlawful for reasons other than gambling or usury did not state a RICO claim).

To the extent Plaintiffs intend to invoke mail fraud or wire fraud as the predicate acts, Plaintiffs' claim still fails in its current form because the Ninth Circuit has found no pattern of racketeering when a defendant's "collective conduct is in a sense a single episode having the singular purpose of impoverishing [the sole plaintiff]." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (citing *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833

---

[5] Because the Court does not know which acts the Plaintiffs view as the predicate acts, it is not possible to assess JPMorgan's statute of limitations argument at this time.

United States District Court
Northern District of California

F.2d 1360, 1364 (9th Cir. 1987)).  So far as the Court can understand Plaintiffs' theory, the goal of Defendants' alleged frauds and conspiracies is to collect money from Plaintiffs or foreclose on Plaintiffs' property.  *See* FAC ¶¶ 248, 277.  Under Ninth Circuit law, however, even if Plaintiffs could establish multiple predicate acts, the FAC would "not establish a pattern because there [i]s no threat of continuing activity" once Defendants accomplish these goals.  *See Medallion Television*, 833 F.2d at1364; *see also Jarvis v. Regan*, 833 F.2d 149, 153-54 (9th Cir. 1987) (pattern requirement not satisfied by allegations that legal aid organizations committed three predicate acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballot initiative).  For all of these reasons, JPMorgan's motion to dismiss the RICO claims is GRANTED.  However, because Plaintiffs could conceivably amend their complaint to state a RICO claim, the dismissal is with leave to amend.  In any amended complaint, Plaintiffs must specifically identify the alleged predicate acts.

### 4. Fraud Claims

Plaintiffs assert "fraud/intentional misrepresentation" claims against all Defendants under California, Colorado, Wisconsin, and New York laws.  Plaintiffs' theory of fraud is not clear.  Plaintiffs allege that "[t]he subject debt does not have any legitimate holder-in-due course, or the actual holder refuses to make themselves known publicly out of fear that they shall be held liable for the fraud that has been a subject of it."  FAC ¶ 285.  This appears to be a reference to Plaintiffs' allegation that CFC failed to deliver the original note and deed of trust assignment to the Bear Stearns ARM trust in the time allowed by the trust's Servicing and Pooling Agreement, thus allegedly making the assignment void.  *See* FAC ¶ 43.

Plaintiffs also allege that "Defendants disguised the transaction to create the appearance of the lender being a properly chartered and registered financial institution authorized to do business and to enter into the subject transaction when in fact the real party in interest was not disclosed to Plaintiff, as aforesaid, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme."  *Id.* ¶ 287.  Plaintiffs do not

25

identify the transaction to which they are referring. Plaintiffs go on, "Said real party in interest, i.e., the source of funding for the loan and the person to whom the note was transmitted or eventually 'assigned' was neither a financial institution nor an entity or person authorized, chartered or registered to do business in this State nor to act as banking, lending or other financial institution anywhere else." *Id.* ¶ 288. Again, it is not clear to what Plaintiffs are referring.

With respect to Plaintiffs' invocation of four states' laws, Plaintiffs do not explain whether they intend the different states' laws to apply to different defendants or acts, or whether they intend to assert state law claims for each of the states against each of the Defendants. The Court assumes that Plaintiffs invoke Colorado law because SLS is headquartered in Colorado. FAC ¶¶ 15-17. The basis for Plaintiffs' invocation of Wisconsin law is not clear—the only mention of Wisconsin in the factual allegations of the FAC comes in paragraph 160, which alleges that "[o]n or about October 2012, Defendants Gillis and Desola, based on Dimond and Board's authorization, called-in and faxed instructions from JP Morgan and SAMI offices, to Defendants Cecere and US Bank Wisconsin offices, to assign Defendants SLS, Wells, Mckernan based on the 2011 falsified Assignment, to be the servicer of Plaintiffs mortgage." FAC ¶ 160.

Neither side briefed a choice of law analysis, and the Court doubts that Colorado or Wisconsin law would apply to JPMorgan and SAMI, the New York-based defendants bringing the instant motion to dismiss, for actions they allegedly took related to California-based Plaintiffs. Thus, the Court will only analyze New York and California law in this order. The Court notes, however, that the statute of limitations analysis would not change even if it were to consider Colorado or Wisconsin law, because the limitations period for fraud is the same in Colorado and California (3 years) and also the same in New York and Wisconsin (6 years). *See* Cal. Code Civ. P. § 338(d) (three-year limitations period for fraud under California law); McKinney's CPLR § 213(8) (six-year limitation period for fraud under New York law); *John Doe 1 v. Archdiocese of Milwaukee*, 303 Wis. 2d 34 (2007) (six-year limitation period for fraud under Wisconsin law); *Hansen v. Lederman*, 759 P.2d 810, 812 (Col. Ct. App. 1988) (three-year limitation period for

26

fraud under Colorado law).

JPMorgan argues that Plaintiffs' fraud claims should be dismissed because they are time-barred and because Plaintiffs' apparent theory of fraud based on CFC's failure to deliver the note and deed of trust assignment into the Bear Stearns ARM trust is contrary to California law. JPMorgan is correct on both points, which the Court addresses in turn.

First, Plaintiffs allege that CFC failed to deliver Plaintiffs' original note and assignment of deed of trust into the Bear Stearns ARM trust on or before May 2006, in violation of the trust's Servicing and Pooling Agreement. FAC ¶ 43. Based on Plaintiffs' own allegations, Plaintiffs first became aware of this problem in 2009, when Plaintiffs "called and sent letters to" various Defendants asking "for a copy of the endorsed note and proof that it along with the Deed of Trust assignment was actually delivered to Bear Stearns ARM trust." *Id.* ¶ 47. Plaintiffs allege that they made the same inquiries each year between 2009 and 2017, and that in each year between 2009 and 2016, Defendants responded "that they could not locate the endorsed note or any proof that it had physically been delivered into the Trust." *Id.* ¶¶ 47-48. Thus, Plaintiffs were aware of the facts underlying the alleged fraud in 2009. Even under the longer, six-year statute of limitations for fraud under New York law, Plaintiffs' claims are time-barred.

To the extent that Plaintiffs base their fraud claims on the May 2011 allegedly fraudulent assignment of the deed of trust, *see* FAC ¶¶ 52-59, Plaintiffs' fraud claims would still be time-barred because they filed this case in October 2017—more than six years after the allegedly fraudulent assignment of the deed of trust.

Finally, to the extent that Plaintiffs base their fraud claims on the December 2016 allegedly fraudulent substitution of trustee, *see* FAC ¶ 246, the claims would not be time-barred. Thus, the Court analyzes the viability of Plaintiffs' underlying theory of fraud, namely that the failure to timely deliver the physical copies of the note and deed of trust assignment to the Bear Stearns ARM trust made the assignment void. *See* FAC ¶¶ 41-43. The California Supreme Court recently explained the legal significance of a void assignment in the context of home foreclosures in

27

ORDER GRANTING MOTIONS TO DISMISS AS TO JPMORGAN CHASE, STRUCTURED ASSET MORTGAGE INVESTMENTS II, JAMIE DIMON, AND AISLING DESOLA; DENYING AS MOOT MOTION TO DISMISS AS TO REAL TIME RESOLUTIONS AND ERIC GREEN

*Yvanova v. New Century Mortgage Corp.*, 62 Ca. 4th 919 (2016):

> [O]nly the entity holding the beneficial interest under the deed of trust—the original lender, its assignee, or an agent of one of these—may instruct the trustee to commence and complete a nonjudicial foreclosure.  If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever, the foreclosing entity has acted without legal authority by pursuing a trustee's sale . . . .

*Id.* at 935.  As the California Court of Appeal explained after *Yvanonva*, "[b]ecause the assignment is without any effect, it can never be ratified or validated by the parties to it."  *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 811 (2016).  "By contrast, a voidable contract or assignment is one that the parties to it may ratify and thereby give it legal force and effect or extinguish at their election."  *Id.*  "*Yvanova* did not consider . . . whether either the assignment of plaintiff's deed of trust to the investment trust after the trust's closing date or the alleged robo-signing of the documents rendered the assignment void, and not merely voidable.  That is a legal question, which has been addressed by a number of New York, California, and federal courts."  *Id.*  As the California Court of Appeal explained in *Mendoza*, 6 Cal. App. 5th 802, "New York law,[6] as interpreted by an overwhelming majority of New York, California, and federal courts . . . provides that defects in the securitization of loans can be ratified by the beneficiaries of the trusts established to hold the mortgage-backed securities and, as a result, the assignments are voidable."  *Id.* at 805; *see also Liao v. New Penn Fin., LLC*, 2018 WL 1061718, at *6 (Cal. Ct. App. Feb. 27, 2018) (stating that theory that assignment was void because loan was not transferred into trust before trust's closing date has "been repeatedly rejected because the defect would not render the assignment to the trust *void*, but only *voidable*"); *In re Turner*, 859 F.3d 1145, 1149 (9th Cir. 2017) (holding that untimely assignment of deed of trust to investment trust is voidable, not void).  Thus, because the beneficiaries of the Bear Stearns ARM trust could ratify the alleged defect in the assignment of Plaintiffs' deed of trust, the assignment was not void.  *See Mendoza*, 6 Cal. App.

---

[6] New York law applies to the Bear Stearns ARM trust Servicing and Pooling Agreement.  *See* RJN, Exhibit S at 3.

28

5th at 805; *In re Turner*, 859 F.3d at 1149.

So far as the Court understands Plaintiffs' theory, the allegedly void 2006 assignment underpins each of Plaintiffs' other allegations of fraudulent assignments or substitutions of trustee, because those actions were fraudulent because they concealed defects in the chain of assignments that stemmed back to the allegedly void 2006 assignment. *See, e.g.*, FAC ¶¶ 50-59, 142, 233-47. Accordingly, Plaintiffs' fraud claims fail because the allegation underpinning them—that an untimely transfer of Plaintiffs' note and deed of trust into the Bear Stearns ARM trust rendered the transfer void and deprived subsequent actors of the legal authority to assign their interests in the note or deed of trust—is incorrect as a matter of law. *See Mendoza*, 6 Cal. App. 5th at 805; *In re Turner*, 859 F.3d at 1149. JPMorgan's motion to dismiss the fraud claims is therefore GRANTED. Because Plaintiffs' allegations of fraud are either time-barred or fail as a matter of law, this dismissal is with prejudice.

### 5. Uniform Commercial Code

Plaintiffs allege their Uniform Commercial Code ("UCC") claim, in full, as follows: "This CLAIM for relief arises under UCC laws whereby any financial instrument which is used in securities must be free of fraud and the assignment of deed of trust must be accompanied by the Blue Inked original Endorsed Note. Defendants stand in violation of such." FAC ¶¶ 291-92. Plaintiffs do not specify any state or federal law under which they bring this claim, nor do Plaintiffs identify the section of the UCC that they believe is relevant. As such, Plaintiffs have failed to state a claim upon which relief can be granted. Moreover, to the extent that Plaintiffs' UCC claim is based on CFC's alleged failure to timely deliver the original note and deed of trust to the Bear Stearns ARM trust, Plaintiffs' claim is likely time-barred, as Plaintiffs allege that they were aware of the problem in 2009. FAC ¶¶ 47-48. However, because the Court does not know under what statutory or other authority Plaintiffs bring this claim, the Court is unable to assess the timeliness of the claim at this time. Accordingly, JPMorgan's motion to dismiss the UCC claim is GRANTED with leave to amend.

### 6. Unjust Enrichment

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)). "A person is enriched if he receives a benefit at another's expense. The fact that one person benefits another is not, by itself, sufficient to require restitution." *Hendren v. Goldberg*, No. B164667, 2004 WL 964891, at *6 (Cal. Ct. App. May 6, 2004). "The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." *Id.* (citing *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1662-1663 (1992), *Cal. Medical Assn. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal.App.4th 151, 172 (2001), and Rest., Restitution, § 1, com. c.)); *see also Astiana*, 783 F.3d at 762 (explaining that restitution and unjust enrichment "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request" (internal quotation marks omitted)). The applicable statute of limitations for Plaintiffs' quasi-contract/unjust enrichment cause of action is California Code of Civil Procedure § 338(d), which governs "[a]n action for relief on the ground of fraud or mistake." *See F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008). The limitations period begins to run when the aggrieved party discovers the facts constituting the fraud or mistake. Cal. Code Civ. P. § 338(d).

Plaintiffs' unjust enrichment claim alleges, in full, that "Defendants' deceptive scheme unjustly enriched Defendants, to the detriment of the Plaintiffs, by causing Defendants to receive excessive monetary payments from Plaintiffs fraudulent mortgage(s)." FAC ¶ 293. "Specifically, Defendants JP Morgan, Dimond and board paid less than $100 for Plaintiffs mortgages, have used their mortgages to take annual tax write offs, were not the original funders of the loans, have failed to notify the original market investors that they were still pursuing collection from payments; there

does not exist any original investors who provided CFC the funds for Plaintiffs['] property involved in the collection or knowledge of the loans." *Id.* "Plaintiffs assert that they would only owe payments to the actual investors of their loans that Bear Stearns defrauded investment dollars from." *Id.* ¶ 294. Thus, Plaintiffs conclude that "Defendants' retention of funds paid by Plaintiffs violates the fundamental principles of justice, equity, and good conscience. Accordingly, Defendants should be ordered to return any funds obtained as a result of their deceptive scheme upon the Plaintiffs to the actual investors who provided Bear Stearns funds and put the Plaintiffs in touch with them." *Id.* ¶ 295.

Plaintiffs' quasi-contract/unjust enrichment claim fails. First, to the extent the claim is premised on any payments that Plaintiffs made, the claim is time-barred. Plaintiffs allege in their FAC that they last made any payments on their loan in October 2008. FAC ¶ 29. The explanation for why these payments constitute unjust enrichment appears to be that Plaintiffs contend that they should have received more favorable terms or that the loan was fraudulent for some other reason. However, Plaintiffs allege in the FAC that they learned of this alleged fraud in 2009. *See* FAC ¶¶ 69 (alleging that Plaintiffs rescinded the mortgages in January 2009); 74-75 (alleging that Plaintiffs realized in February 2009 that their refinance agreement was fraudulent and that Plaintiffs filed a suit in part based on fraud in 2009). Thus, the limitations period began to run at least in February 2009, when Plaintiffs knew of the fraud. Any unjust enrichment claim based on any payments that Plaintiffs made is thus time-barred.

To the extent Plaintiffs base their unjust enrichment claim on the allegations that JPMorgan bought their loan for less than $100 and has received tax benefits as a result, Plaintiffs' claim fails because Plaintiffs have not explained how they were harmed as a result of JPMorgan's actions. Finally, to the extent Plaintiffs' unjust enrichment claim is based on their argument that the investors in the Bear Stearns mortgage-backed securities trust have been harmed by JPMorgan, Plaintiffs do not have standing to assert the rights of these investors. To the extent Plaintiffs' claim alleges that they only owe money "to the actual investors of their loans that Bear Stearns

31

defrauded investment dollars from," *id.* ¶ 294, their claim fails as a matter of law because both the individual loan and mortgage-backed securities can be freely sold by their owners. *See* Jason H.P. Kravitt & Robert E. Gordon, Securitization of Financial Assets § 1601 (3d ed. 2018).

Accordingly, the Court GRANTS JPMorgan's motion to dismiss the unjust enrichment claim. The Court concludes that any amendment would be futile because Plaintiffs have not made any payments since 2008 and were aware of any alleged fraud related to their mortgage no later than 2009, making these claims time-barred. Amendment cannot change these basic facts. Thus, this claim is dismissed with prejudice.

### 7. 42 U.S.C. § 1985(2)

Plaintiffs assert a claim under 42 U.S.C. § 1985(2), subtitled "Obstructing justice; intimidating party, witness, or juror," which "contains two clauses that give rise to separate causes of action." *Portman v. County of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993). "The first clause concerns access to *federal* courts, giving rise to a cause of action where:

> Two or more persons in any State or Territory conspire [A] to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, or [B] to injure such party or witness in his person or property on account of his having so attended or testified . . . ."

*Id.* at 908-09 (quoting 42 U.S.C. § 1985(2)) (emphasis omitted) (alterations in original). "The second clause concerns access to *state or territorial* courts, giving rise to a cause of action where:

> Two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws . . . ."

*Id.* at 909 (quoting 42 U.S.C. § 1985(2)) (emphasis omitted) (alteration in original).

Plaintiffs allege that Defendants "conspired for the purpose of depriving Plaintiff of (a) equal protection of the law; and (b) equal protection and immunities under the law; and for the purpose of preventing and hindering the constituted authorities from giving and securing to Plaintiff equal protection of the law an[d] deprivation of liberty and property without due process

32

of law." FAC ¶ 296. Because Plaintiffs invoke equal protection, Plaintiffs appear to be asserting a claim under the second clause of § 1985(2).

"It is well-settled that the 'equal protection language of the second clause of section 1985(2) [requires] an allegation of class-based animus for the statement of a claim under that clause." *Portman*, 995 F.2d at 909 (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir. 1985)) (alteration in *Portman*). Although Plaintiffs previously pursued civil rights claims against CFC based on alleged race and gender discrimination, *see* FAC ¶ 75, Plaintiffs have not alleged that the Defendants took any of the actions alleged in the FAC based on Plaintiffs' membership in a protected group. As such, Plaintiffs' claim under the second clause of § 1985(2) fails.

However, "[t]here is no such requirement in an action alleging the denial of access to *federal* court under the first clause of section 1985(2)." *Portman*, 995 F.2d at 909 (citing *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)). Although Plaintiffs do not explicitly invoke the first clause of § 1985(2), the Court has a duty to liberally construe Plaintiffs' allegations because they are pro se. Thus, the Court analyzes whether Plaintiffs have stated a claim under the first clause of § 1985(2).

"To make out a claim based on retaliation under the first clause of section 1985(2), a plaintiff must prove four elements: (1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff." *Ward v. City of Barstow*, No. EDCV-15-00444-DSF (KES), 2017 WL 4877389, at *17 (C.D. Cal. June 23, 2017) (quoting *Portman*, 995 F.2d at 909). Even liberally construing Plaintiffs' FAC, Plaintiffs' claim under the first clause of § 1985(2) fails because Plaintiffs have not adequately alleged injury or damages resulting from the conspiracy.

Specifically, Plaintiffs allege that Defendants decided "to threaten and intimidate Plaintiffs with debt collection in a more forceful way to not only intimidate and threaten them but as punishment for being so tenacious on their claims and for refusing to dismiss their cases against

33

these and other defendants in state and federal courts." FAC ¶ 228. The apparent injuries that Plaintiffs allege appear to be unspecified threats, intimidation, and the initiation of foreclosure proceedings. With respect to threats and intimidation, Plaintiffs have not pled anything more specific than conclusory allegations that Defendants conspired to threaten and harass Plaintiffs. Such allegations are not specific enough to state a claim under *Iqbal*. With respect to foreclosure proceedings, Plaintiffs' only theory in the FAC of why the foreclosure proceedings are invalid stems from the allegedly void assignment of Plaintiffs' deed of trust to the Bear Stearns ARM trust. As the Court explained above, this theory of invalidity fails as a matter of law. Plaintiffs concede that they have not made any payments on their loan since 2008. Thus, Plaintiffs have not adequately alleged that the foreclosure proceedings are unlawful, nor have Plaintiffs offered any authority for the proposition that apparently lawful foreclosure proceedings can constitute injury under § 1985(2). Accordingly, JPMorgan's motion to dismiss the § 1985(2) claim is GRANTED with leave to amend. If Plaintiffs choose to amend, Plaintiffs shall specify the clause of § 1985(2) under which they assert their claim.

### 8. 42 U.S.C. § 1986

Finally, Plaintiffs assert a claim under 42 U.S.C. § 1986, which extends liability for § 1985 violations to persons "who, having knowledge that any of the wrongs conspired to be done . . . are about to be committed, and having such power to prevent or aid in preventing the commission of the same, neglects or refuses to do so" if "such person by reasonable diligence could have prevented" the § 1985 violation. The Ninth Circuit has "adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985." *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985) (citing *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983)). Thus, because Plaintiffs have failed to state a claim under § 1985, their § 1986 claim fails as a result. *See id.* JPMorgan's motion to dismiss the § 1986 claim is GRANTED with leave to amend.

## IV. CONCLUSION

United States District Court
Northern District of California

For the foregoing reasons, the Court rules as follows:

- Defendants Dimon and Desola's motion to dismiss is GRANTED without prejudice;
- Real Time Resolutions' motion to dismiss is DENIED as moot;
- JPMorgan's motion to dismiss the accounting claim is GRANTED as to JPMorgan and SAMI with prejudice;
- JPMorgan's motion to dismiss the FDCPA claim is GRANTED as to JPMorgan and SAMI with prejudice insofar as the claim is premised on alleged conduct occurring before October 25, 2016, and with leave to amend insofar as the claim is premised on alleged conduct occurring on or after October 25, 2016;
- JPMorgan's motion to dismiss the Civil RICO claims is GRANTED as to JPMorgan and SAMI with leave to amend;
- JPMorgan's motion to dismiss the fraud claims is GRANTED as to JPMorgan and SAMI with prejudice;
- JPMorgan's motion to dismiss the UCC claim is GRANTED as to JPMorgan and SAMI with leave to amend;
- JPMorgan's motion to dismiss the unjust enrichment claim is GRANTED as to JPMorgan and SAMI with prejudice;
- JPMorgan's motion to dismiss the § 1985(2) claim is GRANTED as to JPMorgan and SAMI with leave to amend; and
- JPMorgan's motion to dismiss the § 1986 claim is GRANTED as to JPMorgan and SAMI with leave to amend.

Because pending motions to dismiss the FAC filed by other defendants are not scheduled to be heard until June 21, 2018 and October 25, 2018, *see* ECF Nos. 63, 103, 104, any amended complaint will not be due until 30 days after the court rules on those motions. If Plaintiffs fail to file an amended complaint within 30 days after the Court rules on all of the currently pending motions to dismiss or fail to cure the deficiencies identified in this order, the claims dismissed in this order will be dismissed with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

Finally, the Court notes that at least two federal judges have expressed concerns with different aspects of Plaintiffs' pleadings in *Merritt I*. Writing in dissent, Ninth Circuit Judge Kleinfeld wrote that Plaintiffs' fifth amended complaint in *Merritt I* was "neither 'short' nor 'plain,'" and that it should be dismissed with prejudice for failure to comply with Rule 8 as a result. 759 F.3d at 1041-43 (Kleinfeld, J., dissenting). On remand in *Merritt I*, Judge Freeman

wrote that she had "grave concerns regarding Plaintiffs' Rule 11 basis for the bulk of their allegations pertaining to their RICO claims. Plaintiffs frequently allege the contents of conversations among the defendants of which it is clear they could not have personal knowledge." 2015 WL 5542992 at *16. Rule 11 requires parties filing documents with the courts to certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

This Court shares both of these concerns with respect to Plaintiffs' FAC in the instant case, particularly Plaintiffs' Rule 11 basis for many of their allegations. Dozens of paragraphs of Plaintiffs' FAC are devoted to recounting the contents of specific phone or in-person conversations between Defendants of which Plaintiffs are unlikely to have personal knowledge. *See, e.g.*, FAC ¶¶ 62 ("Dimond and the other board members stated to one another that they needed to distance JP Morgan's interest from, and conceal its ties to these MBS from borrowers, such as the Plaintiffs, so that they can evade civil or criminal prosecution and appear publicly, and they told Gillis and other staff to see that the Bear Stearns MBS are assigned to a subsidiary company . . . ."), 63 ("On or about March 2008, Defendant Unknown GC and Dimond, based on information and belief, met in Dimond's office where he explained the Unknown GC the decision of JPMorgan's board to cover up Bear Stearns fraud . . . ."), 89 ("During this same conversation, continuing on information and belief, K. Lewis told Dimond that he agreed to direct his subordinates to threaten and intimidate the Plaintiffs with foreclosure proceedings."). As a result, the Court encourages Plaintiffs to avail themselves of the assistance of Mr. Kevin Knestrick of the Federal Pro Se Program in filing any amended complaint. More information about the Federal Pro Se Program is available at https://www.cand.uscourts.gov/helpcentersj. Plaintiffs may make an appointment for a consultation with Mr. Knestrick by calling 408-297-1480.

**IT IS SO ORDERED.**

Dated: April 24, 2018

Lucy H. Koh

LUCY H. KOH
United States District Judge