DAVID MERRITT
SALMA MERRITT
660 Pinnacles Terr
Sunnyvale, CA 94085
408.469.5584
theadaadvocate@gmail.com



FILED

JUN 04 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
SAN JOSE CALIFORNIA

## UNITED STATE DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| DAVID MERRITT ET AL<br><br>Plaintiff,<br><br>vs.<br><br>JP MORGAN ET AL,<br><br>Defendant | Case No.: CV-17-6101 LHK<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT EMERGENCY EX PARTE MOTION FOR TRO** |

## I. INTRODUCTION

The Plaintiffs' brings this emergency application for an *Ex Parte* TRO/Preliminary Injunction order to show cause to Defendants Wells, SLS with its staff and agents, as to why a preliminary injunction should not issue to enjoin them from conducting auction sale and or other foreclosure activities.[1]. The Defendants are seeking to foreclose on the March 2006 note which fraudulently concealed and failed to disclose to the Plaintiffs' the interests rate, monthly payment and all other financial charges which are mandatory under TILA and other laws. Also, the defendants are openly defying the duel tracking prohibition—Plaintiffs' have presented ***multiple***

---

[1] Because SLS is the only Defendant claiming authority to foreclose and JP Morgan, Bryan Cave are claiming no interest or involvement, this motion is directed against the SLS, US Bank et al Defendants.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

*complete* loan modification applications to Defendants and they are repeatedly claiming to not have received it all, and are refusing to actually modify the loan in good faith.

Up until now the defendants have never acted to foreclose on the property and respected the *status quo* while the California Court of Appeals as well as the Ninth Circuit Court of Appeals adjudicated the issues regarding the 2006 blank loan documents. However now, before this court, the defendants appear to be embolden for some reason and have decided to now seek to strip Plaintiffs'' property away from them upon the very falsified and forged documents that the gravamen of this action is based.

## II. STATEMENT OF FACTS

### NOTE FAILED DISCLOSE FINANCE CHARGES & PERI-$200,000 IN PAYMENTS LOST TO FRAUD

On March 14, 2006, Countrywide Home loans (CHL) employees lured the Plaintiffs' away from two mortgage loan brokers who were prepared to finance their home with 5% down payment, with payments that would have been between 3800 to 4200 per month and would have included taxes and insurance. Specifically, CHL presented the Plaintiffs' with a good faith estimate that would've financed the same $729,000 with payments somewhere between 1800 to 2200 including principal and interest. See *Declaration of David Merritt Exhibit A.*

As alleged in their federal and state actions filed in 2009, and which is back up on state and federal appeal, CHL provided the Plaintiffs' HELOC and Note on March 27, 2006 which only disclose that it would be financing $591,000 and omitted and concealed from the Plaintiffs' what the actual interests rate would be or the monthly payments. *Declaration of David Merritt Exhibits B and C.* What's more is that the last page of exhibit B, Bated as MERRITT 000038, is the copy of the truth in lending disclosure statement that CHL was required to disclose all of the

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

finance charges to the Plaintiffs' and as the court can readily see it was never filed then when presented to the Plaintiffs'.

These documents have gone through Federal & State Courts and BofA/Countrywide scrutiny and has not been disputed by Countrywide or Bank of America in the pending state and federal cases. Also see *Declaration of Salma Merritt* regarding 2012 three-day deposition concerning loan documents.

The defendants are now attempting to foreclose upon these very documents which were not disclosed to the Plaintiffs' until 2009 after they had stopped making payments and threatened litigation. See *Declarations of Salma and David Merritt.*

CHL had taken advantage of the Plaintiffs' being newly married and unsophisticated borrowers before inducing them into accepting CHL as their lender and refused to even disclose the financing charges until 2009. *Declaration of David Merritt* ¶¶ 10-13.

From 2006 to 2009 the Plaintiffs' had sent in approximately $200,000 towards their mortgage and ultimately they discovered that their payments were not being applied to the principal of their loan and this precipitated them ceasing further payments in addition to CHL telling them that the only way they could get the 2006 promised loan was to stop making payments and send in a "hardship letter" explaining how their income being reduced from over $10,000 monthly to approximately $7000 per month. They were also told that Wells Fargo was the actual owner of the loan who later denounced such. *Declaration of David Merritt* ¶¶ 15-22.

**2009 CIVIL ACTIONS COMMENCED & MODIFICATION RESCINDED/CANCELLED**

During January 2009 the Plaintiffs' were finally served the filled-in note, among other documents, that had been forged and falsified after the 2006 closing. Taking these documents along with their originals to a local attorney they began to understand that CHL had bated and

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

switched the promised loan with two separate ones which had balloon payments and other predatory terms. They further understood for the first time that although they had paid approximately $200,000 to CHL, that none of it was applied towards their principal. They first attempted to rescind the fraudulent loans with Bank of America, asking only for their $200,000 to be returned and for the promised loan to be afforded. Once they stated that they were drafting lawsuit BofA then attempted to get them to accept and consummate a modification which was essentially another predatory set of loans which were not being combined into the one prime loan that was promised to them now 2009 as well as 2006. Once they cancelled the modification they commenced the litigation. *Declaration of David Merritt* ¶¶23 to 31.

In 2011 Judge Pierce of Santa Clara Superior Court overruled CHL and B of A's demurrers as to conspiracy to Commit fraud in the origination and servicing and modification of March 2006 loans and unfair business practice violations and after 5 years, as the case was being prepared for trial another judge stepped in and the defendants presented some fraudulent defenses via a motion for judgment on the pleadings and duped this new judge into dismissing the case. The same state case has been dismissed in varying degrees and twice reversed and remanded to the Superior Court. *Declaration of David Merritt Exhibits D & E.* The case was also dismissed by this court in 2009, but not until 2014 to the Ninth Circuit reverse it. *Merritt v. CFC et al,* 759 F.3d 1028.

From 2009 to 2016, the Plaintiffs' have each made independent efforts to communicate and negotiate with the defendants, asking them to accept monthly payments that would pay down the principal of the loan and provide them proof that it was paying down the principal and going to the actual owner of their loans. The Plaintiffs' have consistently been willing to pay the rightful secured owner of their loans monthly payments; however, the defendants have refused to

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

agree to such arrangements. And after seeing their $200,000 be misapplied and not accounted for, as the defendants' refusal to provide them the identity of the actual owner of their notes, they believe it is because they do not have a bona fide interest in their loans. *Declaration of David Merritt* ¶¶ 38-42.

### DEFENDANTS VIOLATING DUAL TRACKING LAWS

In addition to earlier attempts to modify loans, the Plaintiffs' in February 2017, after they began receiving new debt collection notices from SLS, sent an application for modification with all needed documents. *Ibid. Exhibit G.*[2] From February to August 2017, the defendants did not deny the Plaintiffs' modification application nor otherwise communicated with them that more information was needed. The Plaintiffs' waited for an acceptance or rejection of their application for modification; then reasoned that no response meant that they were waiting to hear from the appellate courts or seriously producing a modification that the Plaintiffs' would accept. Yet in August/ September 2017, the defendants notified the Plaintiffs' that they would be seeking a foreclosure on the March 2006 Note that concealed interest, payments and other finance charges from them, as well as the May 2011 forged and falsified assignment of deed of trust unless the Plaintiffs immediately paid some $400,000 in interests on the note which would cure the default. *Ibid. Exhibit F.*[3] The Plaintiffs' communicated with defendants that they did not owe the interests and that they would be able to pay the principal, but not until the Court of Appeals reversed its ruling about TILA violations failing to disclose finance charges, would they be willing to pay the fraudulent interests on the note. *Declaration of David Merritt Exhibit G.*

---

[2] The loan modification applications itself has personal & privacy protected medical and financial information itself, but Plaintiffs' would be able to provide this as an in camera exhibit if the Court needs to review.

[3] This assignment of deed of trust was not only forged in falsified by agents of the defendants and 2011, but it was actually allegedly transferred from one owner to another while the defendants had been some 3 years in default, which is prohibited under California and other laws.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

*Exhibit H* in the *Declaration of David Merritt* notified Defendant Wells that his SLS company had violated the Dual Tracking law by pursuing collections and foreclosure during the loan modification process; however, his staff essentially claimed they did not receive it and upon investigation they learned that SLS was notorious for making such claims and illegally foreclosing on home owners. *Ibid.* ¶¶ 52-55 Resulting in Plaintiffs' refiling complete application to Tobey and other SLS employees directly only to have them claim again, this time in writing, that the application was incomplete although the Plaintiffs' met all qualifications to receive a modification, to which Plaintiffs' immediately complied with in October 2017. *Ibid Exhibit J* and ¶¶ 56-58.

Without hearing from the Defendants at all, between October 2017 to May 15, 2018, on whether they were denied or accepted for modification; on May 16, 2018, the Defendants sent an agent to post on their home's door a notice of auction sale set for June 27, 2018, which also does not disclose who the purported Beneficiary or creditor is supposed to be. *Ibid Exhibit K.*

From August 2017 to present the Plaintiffs' have investigated the legal standing that Defendants may have to enforce the Note in which they are seeking to foreclose upon, and they have learned that not a single Defendant has paid any consideration in U.S. or other currency to buy or otherwise become the rightful owner of the Note and have not been assigned to be an agent for the bona fide owner. *Declaration of David Merritt* ¶¶ 62-65.

**III. ARGUMENT**

Under F.R.Civ.P. 65 this Court can issue a preliminary injunction to preserve the *status quo* of the parties pending trial on the merits. *University of Texas v. Camenish,* 451 US 390, 395 (1981). In most cases a plaintiff must show they are likely to succeed on the merits; likely to suffer irreparable harm in the absence of the injunction; the balance of equities tips in their favor;

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

and, the issuance of an injunction is in the public interest. *Winter v. Nat. Res. Def. Coun., Inc.,* 555 US 7, 20 (2008).

However, well-established law in the Ninth Circuit is "if a plaintiff cannot show a likelihood of success but can show 'serious questions going to the merits' with the "balance of hardships tip[ping] sharply in the plaintiff's favor," and can satisfy the other to *Winter* factors, then a preliminary injunction can issue. *Shell Offshore, Inc. v. Greenspeace, Inc.,* 709 F.3d 1281, 1291 (9th Cir. 2013). Moreover, the 9th Circuit holds that the "serious questions" sliding-scale survives the Supreme Court's *Winter* reversal *Leiva-Perez v. Holder,* 640 F.3d 962, 965 (9th Cir. 2011). In accord. *Alameda County v. Weinberger,* 520 F.2d 344, 351 ft nt 12 ("To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e. the balance of hardship tips decidedly toward plaintiff), it will ordinarily be enough that plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.").

The Ninth Circuit also mandates that the greater the irreparable harm to a plaintiff is shown the weaker the questions going to the merits need to be to justify a preliminary injunction. *Alliance for the wild Rockies v. Cottrell,* 632 F.3d 1127, 1133 (9th Cir. 2011).

A court can rely on declarations and exhibits, among other things **and it is emphasized** that such evidence does not need to conform to the standards of Fed. R. Civ. P. 56. See *Johnson v. Couturier,* 572 F.3d 1067, 1083 (9th Cir. 2009). In accord, *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.) *Bracco v. Lackner,* 462 F.Supp. 436, 442 n.3 (ND Cal. 1978)(evidence being considered at limited

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

injunction stage does not need to conform to summary judgment standards). "The urgency

necessitating the prompt determination of the perimeter injunction; the purpose of a preliminary

injunction, to preserve the *status quo* without adjudicating the merits; and the court's discretion

to issue or deny a pulmonary injunction are all factors supporting the considerations of

affidavits." *Bracco,* 462 F.Supp at 442 n.3.

### A.  There is a Likelihood of Success on the Merits Under FDCPA If Nothing Else[4]

For purposes of this motion, the Plaintiffs' will not focus on the fraud and other claims

which articulated in the complaint, but simply wished to focus the most germane claim to the

intent to foreclose upon which it is based.

### i) DIRECT EVIDENCE OF NOTE'S FAILURE TO DISCLOSE MANDATORY TILA DATA

The debt that the defendants aggressively began to collect in 2017 and to which they are

attempting to foreclose on this month, is wholly based upon the blank 2006 Note and its

corresponding TILA, RESPA, HOEPA failures to disclose violations. The evidence presented

herein, view of the exhibits presented in the *declaration of David Merritt* demonstrates that not

only is the note unlawful because of the nondisclosures, but it demonstrates that the reliance

upon the note is explicitly fraudulent in that the note that the Plaintiffs' were served on March

27, 2006 were blank and had no finance or interest charges within it, yet subsequently some

agent of the defendants filled in and falsified interest rates and payments and concealed it from

the Plaintiffs' for years to come. In so the defendants 2017 and 2018 actions to foreclose upon

the falsified and unlawful note brings to the surface the fact that they are trying to collect and

foreclose upon **unlawful finance charges** etc.

---

[4] up until May 2018, the Plaintiffs' were not focused on bringing TILA, RESPA, HOEPA failure to disclose claim, or California Civil Code §§ 1788 et seq. Rosenthal fair debt collection practices act; however, with the May 2018 foreclosure activities these claims arise in direct relation to those already pled and so they reserve the right amend such to this action while demonstrating the violations herein.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

From 2009 to July 2017, neither Bank of America/Countrywide, prior to transferring the debt on the note to the current defendants, nor the current Defendants ever attempted to foreclose on the March 2006 loans. Not until August/September 2017, did they begin this process and it is only now in May 2018 that they are seeking to foreclosed upon the Plaintiffs' based on the 2006 loan documents which brings these TILA fraudulent disclosures back to the fore. In fact, the mere fact that they are attempting to foreclose on the already ruled upon TILA violations demonstrates the on-going, never-ending fraud of these new Defendants, taking up the baton from Countrywide and B of A. In a case which highlights the same practice of leaving borrowers with blank loan documents, this Court issued an injunction while permitting a borrower to move with their § 2923.5 claims. See *Shaterian v. Wells Fargo Bank*, 829 F.Supp.2d 873, 886 (ND Cal.2011).

The issues of TILA, RESPA and fraud, as they relate to the Plaintiffs' being served with blank loan and blank disclosures are issues already ruled upon by the Ninth Circuit Court of Appeals as well as the State Court of Appeals. The *status quo* was to let these respective appellate courts make their additional rulings on those issues—although the Ninth Circuit has already held TILA violations by Countrywide has already been demonstrated by the Plaintiffs', and the 6th Dist. Court of Appeals has already ruled that the blank loan documents demonstrated fraud—however now the defendants are bringing the issue of failure to disclose mandated disclosures back to the forefront within this case itself, by their efforts to foreclose on the very March 2006 blank documents that have already been the rule upon in both Court of Appeals. *Declaration of David Merritt exhibit D*, p.6 & *E* p.4 as being fraudulent and disclosure violations.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

In the reversal and remand by the 9th Circuit Court of Appeals, the Ninth Circuit took note that in March 2006 Countrywide Home loans provided Plaintiffs' "a form for TILA disclosures, but with the spaces left blank for the annual percentage rate, finance charge, amount financed, total of payments, schedule of payments, and variable interest rate." *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1029 (9th Cir. 2014). The Ninth Circuit went on to hold that the Plaintiffs' TILA and RESPA claims were tolled because the loan documents/disclosures in which Countrywide served on them at the time of closing were blank.

This is an issue of fact that has been established not only in this 9th Cir. reversal and remand, but in the state lawsuit as well. Furthermore, the defendants were not only served via discovery with the actual blank loan documents which were marked with Plaintiffs' Bate stamp, as indicated in the declaration of David Merritt exhibits, but none of the defendants or other parties came forward contesting or disputing the fact that the Plaintiffs' were provided disclosures which totally failed to inform them of the mandated TILA disclosures cited by the Ninth Circuit Court of Appeals.

Hence, the likelihood of success on the merits that the Plaintiffs' received blank March 2006 note without finance charges etc, has a very high likelihood of succeeding based on the evidence presented herein. Equally the likelihood of success in showing that the current interests and other charges that the defendants are attempting to collect from the Plaintiffs' are not only unlawful pursuant to TILA and other laws, but at best a forgery or falsification from the blank documents which were left in Plaintiffs hands on March 27, 2006.

TILA mandates that borrowers can obtain actual or statutory damages when a creditor fails to comply with its provisions. 15 U.S.C.§ 1640(A). I.e. "any creditor who fails to comply with *any* **requirement imposed under** [part B] ... or part D or E ... Is liable" to that consumer.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

*Ibid.* in the consumer can recover "any actual damage sustained … As a result of the failure." *Ibid.* § 1640(a)(1)(A). They can also get statutory damages that is **"twice the amount of any finance charge** in connection with the transaction." *In re Ferrell,* 539 F.3d 1186, 1190 (9th Cir.2008). And so the Note which the Defendants are seeking to foreclose upon directly violates 15 U.S.C. §§ 1632 (a), 1638(b)(1) et seq. by failing to disclose the annual percentage rate and finance charges before the credit was extended. *Id.*

The Court has before it bona fide copies of the Note, TILA disclosure and HELOC documents which, on their face, demonstrates that defendants did not provide the Plaintiffs' with the mandatory interests, payment and financial charge information. Hence, the proverbial smoking gun.

A case that is on point, held that when a plaintiff was not provided with all of the required TILA and Reg Z material disclosures, that it indicates a strong likelihood of success on the merits and TRO issue to stop foreclosure sale. *Hughes v. Bravo Credit Corp. et al,* 2008 WL 2682699, *1 (ED Cal. June 30, 2008). Likewise, a TRO/injunction should issue when defendants fail to provide TILA and HOEPA violations of failing to disclose charges, and balloon payments such as was done in this case at Bar. *v. Gregory Funding, LLC,* 692 F.Supp.2d 1270, 1277 (D.Or.2010).

As such, this motion raises serious questions into the merits of the falsified finance charges, as well as the interests being sought from the Plaintiffs' his unlawful. Making this claim alone sufficient for issuance of injunction.

### ii) FORGED & FRAUDULENT NOTE WITH ASSIGNMENT OF DEED OF TRUST etc

The evidence that has gone uncontested or undisputed since the first federal action in March 2009, is the fact that Plaintiffs' were served loan documents which concealed monthly

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

payments, annual percentage rate and other finance charges. In a 2012 Deposition upon Mrs. Merritt, the Plaintiffs presented the original hard copies of the blank loan documents and gave hard copies, in addition to e-copies to Bryan Cave, current Defendant et al. *Declaration of Salma Merritt.*

There are other pieces of evidence that goals towards proving the falsity and forging of the note, HELOC and other loan documents, but this is the clearest one and even if the defendants were to dispute these blank documents now, after failing to do so over the past 9 years, these established that serious questions into the likelihood of success on the merits as to whether the note has been forged and falsified by the Defendants or their agents. It also raises the Spector as to whether the defendants have a legitimate right to enforce any security interests against the Plaintiffs'. Nonetheless, the Plaintiffs' are not arguing for the Court to simply make the debt void, they only wish to delve into this issue via discovery in order to demonstrate to the Court the truth of their allegations and to investigate who the rightful owner is so that they can ensure that any future payments goes to the legitimate beneficiary.

This is what they have been seeking since 2009.

The Court has before it a May 2011 assignment of the note to the current defendants which is stamped by one of their employees with a name that is a nationally confirmed "ROBO signer." This only compounds one falsification an forgery upon the other.

As shown in the last subsection the Plaintiffs' also have a likelihood of success on the merits on this particular issue since they do have documents which raises serious questions into the merits of the claim that the defendants are attempting to collect debt on the basis of falsified information.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

### Defendants Are Debt Collectors Under FDCPA & RFDCPA

As an initial matter, debt collectors can be held to have violated both the FDCPA and the Rosenthal act, CCP § 1788 et seq.

The Defendants have presented the argument in their motions to dismiss, up until now, that they cannot be defined as debt collectors. This Court mandates that if a creditor, mortgage servicing company or assignee took on a debt when it was in default, then they are debt collectors as defined under FDCPA. See *Zhuravlev v. BAC Home Loans Serv.,* 2010 WL 2873253, at *2 (ND Cal. 2010)(citing *Perry v. Stewart Title Co.,* 756 F2d 1197, 1208 (5th Cir. 1985)). The Ninth Circuit holds the same and adds that there must be a "case-by-case approach in determining when a debt is in default." *Natividad v. Wells fargo Bank,* 2013 WL 2299601 at *4 (ND Cal. 2013).

The *Natividad* Court held that the "mere overdue payments may constitute a debt that is in default." *4.

In this case, the defendants admit that they made a new assignment in May 2011 which was recorded with the County of Santa Clara and that this gives them the authority to foreclose on March 2006 Note. See Defendants' motions to dismiss and corresponding exhibits. This 2011 assignment, aside the fact that it is a verifiable forged and falsified document, purports to assign Defendants US Bank and SAMI over the Note, who then hired defendants Tobey, SLS et al to service the mortgage in place of Bank of America. Of course in 2017 the defendants made an additional reassignment to Zieve, Brodnax and Steele. None of these defendants gave consideration for interests.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

On the other side of the equation, the defendants have acknowledged that they have not received any payments from the Plaintiffs' since October/November 2008 and the Plaintiffs' acknowledge as much.

This information, which is already in evidence, categorically demonstrates that defendants are bona fide debt collectors who are subject to the Rosenthal act as well as FDCPA, notwithstanding the fact that they are trying to collect the debt upon fraud and in a fraudulent manner.

So for purposes of this TRO/preliminary injunction, the Plaintiffs' will be able to easily achieve likelihood of success on the merits since the evidence illustrates the debt was assigned at least 2 times during the default of the Plaintiffs.

**Defendants Have No Beneficial Interest Or Standing to Foreclose**

For more than 9 years, the defendants have been unable to present the Plaintiffs' with any proof of their actual right to enforce the debt this is evidence that they have no right to take possession of the property in violation of 15 U.S.C. § 1692f(6)(A). In fact, since they first introduce themselves to Plaintiffs' on or about September 2017 with their claim to be authorized agents to collect debt all of the communications that the Plaintiffs' have had them have failed to produce any evidence or even acknowledgment from any of the defendants' staff that they are actual beneficiaries or assigned agents of the beneficiary.

And if the Court were to simply ask the defendants to produce the original creditor's ownership of the note and their subsequent transferring of rights along with financial transactional records showing consideration was paid—such that can be verified— the Plaintiffs' are pretty assured that they would not be able to comply with such a court order and would default thereon. The Court will see first-hand that they do not have a right to possession of the

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

property through any enforceable security interest. Hence, this is an additional claim to which Plaintiffs' raise serious questions into the likelihood of success on the merits. See *Burke v. JP Morgan Chase Bank,* No.13-4249 SC (ND Cal.2015)(Though Plaintiffs'' FAC is verbose, unclear, and at times appears internally inconsistent, Plaintiffs' now allege, at the very least, that: WAMU irrevocably sold all right, title and interest in Plaintiffs' mortgage loan, for value received, to the JP Morgan trusts ... A private label mortgage backed securities trust with a real estate mortgage investment conduit...."

Although this Burke case is not published this action has facts even more cognizable in that the evidence demonstrates that none of the defendants are claiming a beneficial interest in the mortgage and they equally claim that they don't know who to beneficiary actually is. So the question arises how could they be foreclosing for someone or some entity that they actually have no connection to or information about. The complaint raises serious questions into the likelihood of success on the merits on this claim as well.

## FRAUD, RICO AND OTHER CLAIMS

The plaintiff should not have to prove the likelihood of success on the merits for every cause of action in their complaint and to go on into fraud and RICO which requires identifying a lot more specificity would take up a lot more space in this motion, however, the Plaintiffs' do not waive any arguments pertaining to these claims and they contend that the complaint itself does demonstrate serious questions into the likelihood of success upon them as well.

### B.  Plaintiffs' Will Suffer Irreparable Harm Without TRO & Preliminary Injunction

It is well-established that losing "one's home through foreclosure is generally considered sufficient to establish irreparable harm." *Saba v. Caplan,* C10-02213 SBA, 2010 WL 2681987, at *5 (ND Cal.2010). It is also well-established that a preliminary injunction should issue where a

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

stronger showing of irreparable harm to a plaintiff will offset a weaker showing of likelihood of success. *Alliance, supra,* 632 F.3d at 1131 (sliding-scale and serious questions after Winter).

In this case of course the likelihood of success on the merits in several claims is strong. But in addition to the strong likelihood on the merits is the fact that the loss of their home, particularly to agree just fraud by publicly known predatory lenders, is an especially the egregious irreparable harm.

The Plaintiffs' were newlyweds when they purchased their first home early 2006. They had also published a nonfiction work which rapidly catapulted them on a national tour with Barnes & Noble, with invitations coming from the Los Angeles Festival of books and personal invitation by Julien Bond of the NAACP inviting them to its 2007 national convention which brought them into meetings with Hilary Clinton, Barrack Obama, and others. Perhaps if they did not have such exciting things happening their life they may not have been so easily duped by Countrywide, but the fact remains that this was their first and only home and frankly they were unsophisticated in purchasing the home.

The evidence is that the Plaintiffs' have plunged some $200,000 into this home of their hard-earned money, had personally redid all of the floors from carpet to would, added extra rooms, built play structures, chicken coop and painted every room in their own personal design. In the year 2009, they were so upset and disturbed by the fraud which was uncovered that they were willing to walk away from this home only if Countrywide/B of A were willing to return their $200,000 to them; however, those defendants refused to do so which has resulted in the Plaintiffs' taking their focus off of their small businesses and personally litigating against the injustices which were perpetrated upon them. So not only would there be a physical loss of the home if the Court did not enjoin the defendants from doing so, there would be a significant loss

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

of 9 years of life, money as well as other things that would not be able to be replaced by any subsequent court order.

The reason this litigation has been going on for 9 years is specifically because after being violated, essentially raped economically by Countrywide and Bank of America, the audacity of the defendants to refuse an amicable resolution and to prefer paying large law firms large fees to defend their predatory fraud and corruption, versus simply resolving things, is like being raped over and over again. There is no other way to describe the feeling that one gets at the hand of these predatory lenders.

Now, the defendants are emboldened to foreclose upon their home. As long as the respective Court of Appeals follows their own judicial principles the Plaintiffs' will prevail in obtaining 2 additional reversals, but if the home is auctioned off there will be no way to recover the personal, emotional, economic and other equity value that is within the home. Irreparable harm is quite clear here.

### C.  The Balance of Hardships Favors The Plaintiffs'

The defendants themselves actually have nothing to lose. It is alleged that they are not the actual beneficiaries and the 2011 and 2017 assignments are based upon fraudulent 2006 documents. And from their own admissions they do not have any financial or other interest in the loans associated with Plaintiffs' property. Not a single defendant in this case has paid a penny to acquire interests in Plaintiffs loans and they are simply stepping into the shoes of the rightful beneficiary, who does exist, but is being concealed from the plaintiffs and the plaintiffs from the beneficiary.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

Additionally, from the beginning of the reassignment of this loan none of the defendants received any payment from the plaintiffs and so they can claim no losses in this regard as well. Can it be a hardship to not receive something that is not owed to you?

On the other hand, the Plaintiffs' would not only suffer the hardship of having their long-suffering litigation regarding fraud in the origination, servicing and modification undermined along with the status quo being thwarted, but they would actually lose their home and residence of more than a decade along with all of their equity that they have invested in the property and nine years of their life in litigating claims.

The issuance of a TRO/injunction will only delay a foreclosure sale if the defendants are later able to demonstrate actual beneficiary interests or agency, and by some unforeseeable miracle that they did not falsify or forge the May 2006 loan documents. Such is insignificant compared to the loss of one's home or property. See *Magana v. Wells Fargo Bank, N.A.* 2011 WL 4948674 (ND Cal. Oct. 18, 2011); *Osorio v. Wells Fargo*, 2012 WL 1909335 (ND Cal. May 24, 2012) *Gonzales v. CitiMortg Inc.* 2014 WL 7927627 (ND Cal. Oct. 10, 2014)l *Mace v. Ocwen Loan Serv. LLC*, 2016 WL 9275406 (ND Cal. December 29, 2016) each case relying on 9th Cir. precedents.

However, a very important note here is this: "It is an accepted equitable principle that a court does not balance the equities in a case where the defendant's conduct has been willful." *United States EPA v. Environmental Waste Control, Inc.*, 917 F.2d 327, 332 (7th Cir. 1990) (affirming grant of injunctive relief) (citing *Guam Scottish Rite Bodies v. Flores,* 486 F. 2d 748, 749 (9th Cir. 1973)).

This action's defendants are acting quite willful and unlawfully. They had full cognizance that the 2006 note that was provided to the Plaintiffs' were provided to them without

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

interests, payments, finance fees and essentially blank. They knowingly presented falsified documents to, without qualification or disclosing to this Court that the Note is a subject of dispute, and appears to have been quite effective in persuading this particular Court to accept their fraudulent/falsified note without question. There are tons of communications between Bryan Cave and J.P. Morgan chase along with the other defendants which gave them the discovery that Plaintiffs' provided in other cases.

In truth, the Court does not even need to waive the balance of hardship in this case because the complaint as well as the declarations filed herein indicate behavior which is quite willful. Nonetheless, the potential injuries to the Plaintiffs' at the hands of defendants far outweighs any inconvenience, not harm, that a preliminary injunction may cause to the defendants. For to disrupt predatory lenders fraud upon the court would not be harm to them, but a mere disruption of the fraud.

Additionally, the defendants cannot claim any overriding interests in moving forward with the foreclosure that has been in default since October/November 2008 and to which they have been utterly unable to produce any authentic evidence showing that they are the owners of the note or are acting on behalf of the bona fide owner of the note. Essentially, as the complaint alleges in the *declarations of Salma and David Merritt* with its exhibits clearly demonstrate, the defendants are attempting to commit additional fraud against the Plaintiffs' on top of what Countrywide had perpetrated from 2006 to 2009. In having no legitimate interest in the note to which they are attempting to foreclose upon, and attempting to foreclose upon a note which never disclosed to the Plaintiffs' the interest rate, monthly mortgage payment, or finance charges

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

mandated via TILA, makes it all the urgent for this court to intervene and enjoin them from committing additional offenses against the Plaintiffs'.[5]

The Court also has before it Plaintiff's tireless attempts to first rescind the loans when they learned of the fraud in the origination and servicing and Defendants adamant refusals to permit such—which lead to the Ninth Circuit reversal—followed by more than eight years of attempts to pay down the principal while they litigate the overall fraud in the origination, servicing, and modification of their loans. The court also has before it in direct evidence showing that although the Plaintiffs' had made approximately $200,000 in payments between 2006 and 2009, the principal of their mortgage was still $591,000 by 2009.

The actual damages that the Plaintiffs' have suffered is the concealment of finance charges in the March 2006 Note, and TILA disclosures as well as all subsequent charges. Plaintiffs' have direct evidence of CHL et al culpability and at the time that the Note was assigned in 2011, SLS, SAMI in all of the defendants had explicit notice of the fraud that took place in the origination, servicing and modification of the loans.

The defendants are claiming a right to enforce the debt. However, they are unable to: (1) apply the approximate $200,000 that Plaintiffs' had paid between 2006 and 2009 to the principal of the loans; (2) Not able to produce any verifiable evidence from the original note holder that plaintiff's note was signed over to them for either ownership or enforcement; (3) Unable to produce the real Beneficiary; (4) Unable to provide proof that they paid any consideration to obtain an interest in the Note, and hence by extension; (5) Cannot demonstrate loss.

---

[5] In light of the defendants may 2018 act action to foreclose, the Plaintiffs' will have to amend the complaint to include the specifics as depicted fully within the declaration of David Merritt and to which had not previously been alleged in such detail in the complaint because Plaintiffs' did not have standing to sue the defendants unless they attempted to truly foreclose on the bogus May 2006 blank Note which they subsequently forged in falsified after they got Plaintiffs' signatures on blank forms.

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

### D.  The Public Interest Favors Injunctive Relief

For the Plaintiffs' to remain in their home is a very strong public interest since the cost to the defendants only needing to wait a little longer to foreclose if it turns out that they have legitimate rights and basis to do so, significantly pales in comparison to the risk of irreparable harm to Plaintiffs' losing their home. See *Brinker v. JP Morgan Chase, N.A.,* No. 13-CV—1344-LHK, 2013 WL 7798675 (ND Cal. 2013)

For borrowers to have protection from predatory lenders who have fraudulent practices is another significant public interests that the courts should protect.

### BOND IS NOT REQUIRED IN THIS APPLICATION FOR TRO/INJUNCTION

As this Court knows, it can waive the bond requirement under rule 65, when there would be very little or slight harm to the enjoined party; or there would be harm to the movant; or the Plaintiffs' establish the likelihood of success on the merits. See *Ticketmaster LLC v. RMG Tech., Inc.* 507 F.Supp.2d 1096, 1116 (CD Cal. 2007).

As shown above, there is literally will be no harm to any of the defendants at all. It's a simple as that. The defendants are pursuing a debt that they neither have a direct interest in; nor able to produce the actual beneficiary who can verifiably show their interests in the note with any authorization for the current defendants to act as agents in the collection of the debt. Likewise, it is the plaintiffs who are owed twice the finance charges, as well as other damage amounts, from the defendants. And so a bond is not required in that regard.

On the other hand, there would be harm to the plaintiffs. The Plaintiffs' have spent hundreds of thousands of dollars of their own funds in investigating and prosecuting the fraud in their mortgage financing over the past 9 years. They themselves have loss millions during these years due to loss of income and opportunities which Defendants fraud upon them has taken

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

away.  And they are still required to continue litigation in the state and federal courts as well as

this Court. Any bond would effectively prevent them from accessing meaningful judicial review

in this case. In so this is a 2nd basis for the Court to not require a bond.

> The district court also properly exercised its discretion to allow the League to Save Lake Tahoe to proceed *without posting a bond*. The court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review. See Natural Resources Defense Council v. Morton, 337 F.Supp. 167 (D.C.D.C.1971); cf. Friends of the Earth v. Brinegar, 518 F.2d 322, 323 (9th Cir.1975) (injunction pending appeal). The League, a non-profit environmental group, indicates that it is unable to post a substantial bond. Moreover, *special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute*. See Friends of the Earth, 518 F.2d at 323; (National Environmental Policy Act); Natural Resources Defense Council, 337 F.Supp. at 168-69 (same). The Tahoe Compact specifically provides for private enforcement. Article VI(j)(3). Finally, the likelihood of success on the merits, as found by the district court, tips in favor of a minimal bond or no bond at all. Friends of the Earth, 518 F.2d at 323.

*People of State of Cal. Ex rel Van de Kamp v. Tahoe Reg. Plan. Agency,* 766 F.2d 1319,

1325-26 (9th Cir.1985). Emphases Plaintiffs''.

Although this Court does not wish to apply *pro se* standards towards the Plaintiffs, it

should at least recognize that the plaintiffs are not a law firm with paralegals, legal assistance or

lawyers who are able to assist them in this case and that the million-dollar budgets that

defendants have far outstrips any amount of funds the plaintiffs would have access to. In so for

every dollar that the plaintiffs have access to the defendants literally has $1 million to match, and

so to require a bond from the Plaintiffs would disproportionately handicapped them in pursuing

redress for their claims.

In the case at bar, again the defendants are not the rightful beneficiaries or agents of the

beneficiaries and are not entitled to any payments from the Plaintiffs'. Secondly, the Plaintiffs'

have no way of identifying at this time who the actual beneficiary is. Thirdly, and most

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

importantly, there has been no payments made to anyone since October/November 2008 and Countrywide has gone out of business after defrauding millions of homeowners around the country. The 4th factor is the defendants were only assigned to service this mortgage sometime around 2012 after the Plaintiffs' were several years in default and thereby never established any payments from them at any time and literally have never invested any of their own funds in the origination of the loan. The 5th issue is that the note itself is falsified, the interest rate is unlawful in that it was never disclosed to the Plaintiffs'. And lastly, the Defendants are in no way going to be harmed by being enjoined from doing something that is illegal as a matter of law. And so a bond would not be protecting them in any way.

Accordingly, on the failure to disclose finance charges alone, the Defendants will be liable to the Plaintiffs' for at least twice the amount of finance charges—i.e. approximately one (1) million dollars—plus actual damage sustained etc. A consumer may recover "any actual damage sustained . . . as a result of the failure." *Id.* § 1640(a)(1). A consumer may also obtain statutory damages totaling "twice the amount of any finance charge in connection with the transaction" from a creditor who fails to comply with certain provisions of the Act. *Id.* § 1640(a)(2)(A)(i).

**IV. CONCLUSION**

The Plaintiffs request that the Court issues TRO directing the defendants to: (i) immediately halt and cancel the sale of plaintiffs home at 660 Pinnacles Terrace, Sunnyvale, Ca and; (2) show cause, if any exist, for why the Court should not issue a preliminary injunction

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**

I, David Merritt, hereby declare under the penalties of the United States of America, via 28 USC § 1746 and state of California laws relating to penalties of perjury that the foregoing references and states are true and correct and if called upon to do so I can testify to same.

Dated: June 4, 2018                                    Respectfully submitted,

David Merritt

### CERTIFICATE OF SERVICE

I, Marreon G. Starks hereby certify that I emailed a copy of:

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE, WITH DECLARATIONS OF DAVID AND SALMA MERRITT AND MEMORANDUM OF LAW TO:**

Timothy Ryan tryan@theryanfirm.com Michael Stoltzman mstoltzman

@theryanfirm.com 30 Corporate Park, ste 310 Irvine Ca 92606

On June 4, 2018.

Executed in Santa Clara County California.

Marreon G. Starks
858 Coleman
Menlo Park, CA

**PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE**