United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID MERRITT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMIE DIMOND, et al.,<br><br>    Defendants. | Case No. 17-CV-06101-LHK<br><br>**ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 118 |

Before the Court is Plaintiffs' emergency ex parte motion for a temporary restraining order ("TRO") to prevent the foreclosure sale of their home. ECF No. 118 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court DENIES the motion for a TRO.

**I.  BACKGROUND**

**A.  Factual Background**

Plaintiffs obtained a home loan from Countrywide Financial Services ("CFC") in 2006, secured by a deed of trust against Plaintiffs' property in Sunnyvale, California. Request for

1
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Judicial Notice ("RJN"), ECF No. 134-1, Exh. 1.[1] Plaintiffs stopped making payments on their loan in October 2008. Second Amended Complaint ("SAC") ¶ 71 (alleging that Plaintiffs made monthly payments between March 2006 and October/November 2008).

Plaintiffs sued CFC in March 2009 in the Northern District of California and alleged a range of claims including violations of the Truth in Lending Act, gender and race discrimination, state law fraud, and violations of the Fair Debt Collection Practices Act ("FDCPA"). *See Merritt v. Countrywide Fin. Corp.*, No. 09-cv-1179 ("*Merritt I*"). After the district court dismissed their case with prejudice, Plaintiffs refiled their state law claims in state court and appealed the district court's dismissal to the Ninth Circuit. *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-1179-BLF, 2015 WL 5542992, at *5 (N.D. Cal. Sept. 17, 2015); *Merritt v. Mozilo*, No. 109CV159993 (Cal. Sup. Ct.) ("*Merritt II*"). The Ninth Circuit reversed in part and remanded. *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1041 (9th Cir. 2014). Upon remand, the district court allowed Plaintiffs to amend their pleadings and eventually dismissed the case with prejudice. *Merritt I*, 2016 WL 6573989 (N.D. Cal. June 29, 2016). Plaintiffs' appeal in *Merritt I* is currently pending before the Ninth Circuit. *See Merritt v. Countrywide Fin. Corp.*, Case No. 16-16311; SAC ¶ 60.

Similarly, in state court, the trial court sustained defendants' demurrers in *Merritt II*, but the California Court of Appeal reversed in part and remanded on at least two appeals. *Merritt v. Mozilo*, No. H037414, 2013 WL 4942063 (Cal. Ct. App. Sept. 13, 2013); *Merritt v. Wells Fargo Bank, N.A.*, 2011 WL 6330596 (Cal. Ct. App. Dec. 19, 2011). Another appeal is currently

---

[1] Mckernan, SLS, U.S. Bank, and Wells request judicial notice of several court filings in other state and federal court cases filed by Plaintiffs, as well as several documents filed with Santa Clara County. *See* ECF No. 134-1. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, in the instant case, the Court only takes judicial notice of the fact of the filings; the Court does not accept as true any of the disputed facts in the filings. As such, the Court GRANTS the request for judicial notice.

pending before the California Court of Appeal. *See Merritt v. Mozilo*, No. H041560; SAC ¶ 60.

Plaintiffs devote more than 200 paragraphs of the FAC to describing a series of alleged conversations between Defendants and their unidentified employees between 2006 and 2014. Allegedly, these conversations were about Plaintiffs' loan and Defendants' alleged schemes to conceal fraud committed by Bear Stearns and to commit fraud on the various courts hearing *Merritt I* and *Merritt II*. *See* SAC ¶¶ 25, 45-269. Plaintiffs also allege that Defendants conspired to record fraudulent assignments of Plaintiffs' deed of trust and to threaten Plaintiffs in an effort to collect on the fraudulent loan. *See, e.g.*, *id.* ¶¶ 129-34, 166-70, 173-77.

Plaintiffs previously alleged that CFC sold their note to "Bear Stearns ARM trust, mortgage pass-through certificates, series 2006-2." First Amended Complaint, ECF No. 29 ¶ 43. Plaintiffs alleged on information and belief that the original endorsed note was never delivered to the custodian of the trust, "making it void under California [law] and [the Uniform Commercial Code]." *Id.* Plaintiffs alleged that in each year between 2009 and 2017, they "called and sent letters to CFC, BofA, Bryan Cave, Recontrust, SLS and ultimately US Bank, JP Morgan, Zieve, Brodnax and Steele and their respective[] CEOs and Board of Directors for a copy of the endorsed note and proof that it along with the Deed of Trust assignment was actually delivered to" the Bear Stearns trust. *Id.* ¶ 47. Plaintiffs alleged that until September 2017, Defendants told Plaintiffs that they could not locate the original note, but in September 2017 Defendants claimed to have the original note. *Id.* ¶ 48.

It is unclear from the SAC whether Plaintiffs have abandoned their theory of untimely delivery of the original endorsed note or whether their new allegations are meant to elaborate on that theory. Specifically, Plaintiffs now allege that "there were no trust documents completed by any settlor; Plaintiffs['] mortgage was never entrusted to US Bank into Bear Stearns Trust for its beneficiaries; it never actually managed Bear Stearns ALT-A Mortgage Backed Trust 2006-2 Pass-Through Certificates and there was not and is not an active trust from today in 2018, which Defendants currently claim to exist, nor in any other year going back to 2006-Defendants represented to Plaintiffs and now this Court a phantom trust." SAC ¶ 45. Plaintiffs also allege

3

Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

that in 2006, "Bear Stearns staff up loaded [*sic*] to the Securities & Exchange Commission an uncertified and unsigned Servicing & Pooling Agreement which claimed that certain mortgages were delivered to and maintained by Defendant US Bank as Trustee for certificate holders of Bear Stearns Alt-A Mortgage Backed Trust 2006-2 Pass-Through Certificates and was never actually filed with the SEC." *Id.* ¶ 47; *see also id.* ¶ 74 (alleging that CFC and Bear Stearns were "legally bound" to deliver the "blue ink original endorsed" notes to the trust). Plaintiffs also allege that CFC and Bear Stearns destroyed the original notes and so did not deliver them into the trust. *Id.* ¶¶ 80 (alleging that the notes were destroyed and not delivered into the trust), 83 (same).

Plaintiffs allege that Dimon and the JPMorgan board knew that Plaintiffs' mortgage was based on unspecified fraud and, wanting to distance themselves from the fraud, Dimon and the JPMorgan board arranged in April and May 2011 for US Bank to become Trustee on the Deed of Trust. *Id.* ¶¶ 50-51, 54, 58, 89-90. Somehow Bank of America allegedly became involved, and Plaintiffs allege that Bank of America falsified a reassignment of Deed of Trust naming US Bank as Trustee and recorded the reassignment with Santa Clara County in May 2011. *Id.* ¶¶ 93-94, 96-100. Plaintiffs allege that these actions were the formation of the "JP Morgan-SLS Enterprise" for the purposes of their civil RICO claim. *See id.* ¶¶ 157-77.

The most recent alleged conspiracy concerned a plan "to threaten and intimidate the plaintiffs into paying an unlawful debt (produced through falsification of county records) by presenting Plaintiffs with a claim to collect debt based on an assignment of deed of trust which was falsified in May 2011; a fraudulent modification agreement which is void as of February 2009 and produced by fraud as well as the December 2016 substitution of trustee." SAC ¶ 291. The conspiracy began in November 2016, when Defendant Goldberg allegedly:

> placed a call from his San Francisco office to Defendant Gillis and other[s] and informed them that he believed that since he was successful in obstructing Plaintiffs['] state and federal case[s] that[] they are still trying to pursue them through appeals and may very well succeed again, and he believed that it was now time for JP Morgan to threaten and intimidate Plaintiffs with debt collection in a more forceful way to not only intimidate and threaten them but as punishment for being so tenacious on their claims and for refusing to dismiss their cases against these and other defendants in state and federal courts.

4
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

> …
> On or about December 2016, Gillis spoke with Dimond in his office, explaining Goldberg's idea to threaten and intimidate Plaintiffs by actually pursuing foreclosure against them versus merely threatening them with such and Dimond told Gillis that he agreed with this idea, then told Gillis for him and other Unknown GCs [to] implement the idea by contacting US Bank, SAMI and SLS counterparts asking each if they would do this for JP Morgan in exchange for certain compensation.
> …
> Continuing on information and belief, Cecere told the Unknown GC in December 2016, in his office that he agreed with the idea and to inform Gillis to tell Dimond that he would initiate foreclosure proceedings against the Plaintiffs based on the falsified Assignment and fraudulent mortgage; but he informed Dimond that MERS did not actually have the authority to transfer trusteeship to US Bank in 2011 and MERS was only the nominee without any interest in Plaintiffs['] mortgage.
> …
> On or about December 22, 2016, Defendant Mckernan told Steele, based on information and belief, that she agreed to implement the plan and threat [*sic*] she me[t] with Defendant Ward in his office, explaining Goldberg and Dimond's plan and ask[ed] if he were willing to falsify a Substitution of Trustee to give the appearance that he was a legitimate employee of US Bank making the substitution; portraying US Bank as a legitimate trustee for the Bear Stearns trust, although it was not, and substitute Zieve Brodnax & Steele in its place so that he, Mckernan and Wells can have them foreclos[e] on Plaintiffs['] property in order to punish them for their litigation.

SAC ¶¶ 272, 274, 276, 288.

Plaintiffs allege that Defendants Ward and McKernan falsified a substitution of trustee in late December 2016 in order to proceed with foreclosure on Plaintiffs' home. *Id.* ¶¶ 288-90. JPMorgan then "directed US Bank to target the Plaintiffs for debt collection by directing Wells and SLS to resume sending notices to them for payment of mortgage which CFC and BofA waived standing on [*sic*] to collect after eight years of Plaintiffs refusing to make payments until they corrected the fraud which was committed against them." *Id.* ¶ 292.

Plaintiffs allege that in July 2017, Defendants Dimon, Desola, Gillis, and Costango decided to proceed with foreclosure. *Id.* ¶ 295. Defendants Steele, Zieve, and Busby then filed a Notice of Default and Election to Sell Under Deed of Trust with Santa Clara County. *Id.* ¶ 300.

Plaintiffs conclude that:

> Defendant Dimond, through JP Morgan corporate authority, based on information

5
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

> and belief, entered into secret agreements in each year 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2018 [*sic*] and 2018, with SAMI, Bryan Cave, BofA, US Bank, MERS, SLS and other businesses to conceal JP Morgan, its board and employees from being identified as having involvement in fraudulent mortgages and to support the falsification of county recorded instruments in order to strip income, savings, equity and property from those borrowers, as the Plaintiffs, who CFC and Bear Sterns had defrauded; as well as to evade liability for such fraudulent activities.

*Id.* ¶ 303.

## B. Procedural History

Plaintiffs, proceeding pro se, filed this case on October 25, 2017. ECF No. 1. On November 14, 2017, one of the defendants declined magistrate judge jurisdiction, and this case was reassigned to the undersigned judge. ECF Nos. 16, 18. Also on November 14, 2017, Defendants Real Time Resolutions, Inc. and Eric Green (collectively, "Real Time Resolutions"), filed a motion to dismiss. ECF No. 15. On December 22, 2017, Defendants JPMorgan Chase Bank, N.A and Structured Asset Mortgage Investments II, Inc. (collectively, "JPMorgan"), filed a motion to dismiss. ECF No. 20. On December 26, 2017, Defendants Specialized Loan Servicing, LLC, Toby Wells, Ami McKernan, U.S. Bank National Association, and Andrew J. Cecere (collectively, "SLS"), filed a motion to dismiss. ECF No. 23. On January 8, 2018, Real Time Resolutions filed an amended motion to dismiss. ECF No. 26. On January 16, 2018, Plaintiffs filed their first amended complaint ("FAC"). ECF No. 29.

On January 30, 2018, the Court determined that under Rule 15(a), Plaintiffs' FAC qualified as an amendment as of right in relation to SLS's amended motion to dismiss because the FAC was filed within the 21 day limit. ECF No. 57 at 2. However, the Court determined that Plaintiffs' FAC was not an amendment as of right in relation to Real Time Resolutions or JPMorgan because the FAC was filed over 21 days after these defendants filed their motions to dismiss. Nonetheless, the Court stated that "Plaintiffs are proceeding pro se, which means the Court must liberally construe Plaintiffs' pleadings and arguments. The Court therefore construes the FAC as including an implicit request for leave to amend the initial complaint, and GRANTS Plaintiffs' request for leave to amend the initial complaint." *Id.*

6
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

On January 30, 2018, JPMorgan filed a motion to dismiss the FAC. ECF No. 58. Plaintiffs' opposition was due by February 13, 2018. *Id.* On January 31, 2018, Desola and Dimon filed a motion to dismiss. ECF No. 60. Plaintiffs' opposition was due on February 14, 2018. *Id.* On February 6, 2018, Real Time Resolutions and SLS filed motions to dismiss. ECF Nos. 62, 63. Plaintiffs' oppositions were due on February 20, 2018. *Id.* Also on February 6, 2018, Plaintiffs voluntarily dismissed Real Time Resolutions pursuant to Federal Rule of Civil Procedure 41(a)(1)(a)(i). ECF No. 64.

On February 15, 2018, after two of the deadlines for filing oppositions had passed, Plaintiffs filed an administrative motion for an extension of time to oppose the motions to dismiss. ECF No. 70. On February 21, 2018, the defendants opposed Plaintiffs' administrative motion. ECF Nos. 72, 74. On February 23, 2018, the Court denied Plaintiffs' administrative motion, ECF No. 80, and granted the motion to continue the Rule 26(f) conference and stay discovery, ECF No. 83.

On March 6, 2018, Plaintiffs filed a motion for recusal pursuant to 28 U.S.C. § 455. ECF No. 87. Plaintiffs asserted seven grounds for recusal: (1) the Court's denial of Plaintiffs' administrative motion for an extension of time; (2) the allegation that there are four JPMorgan Chase accounts registered in the name of "Lucy Koh"; (3) the Court's "admonish[ing] Plaintiffs for exercising their right to amend without leave of court prior to the defendants filing a bona fide answer to action"; (4) Defendants' request for judicial notice of filings in other cases filed by Plaintiffs in state and federal court, which Plaintiffs contend are irrelevant to the instant case;[2] (5) the allegation that the Court accepted as true the documents in the request for judicial notice, allegedly demonstrated by the Court's denial of Plaintiffs' administrative motion for an extension of time; (6) the Court's denial of Plaintiffs' request for ECF access; and (7) the Court's sua sponte

---

[2] JPMorgan filed a request for judicial notice on December 22, 2017, in which it requested that the Court take judicial notice of a range of filings in other cases brought by Plaintiffs in state and federal court. ECF No. 20-1. The Court infers that this is what Plaintiffs were referencing when Plaintiffs alleged that the Court "accepted, without opposition, filings by the defendants which not only have no relevancy to this actual action, but are wholly extraneous to complaint and improper for consideration by the Court since they are not part of complaint." ECF No. 87 at 2.

7
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

referral to Judge Freeman for purposes of determining the relationship of the instant case to Case No. 09-CV-1179-BLF.

On March 7, Plaintiffs filed an administrative motion to file their opposition past the deadline. ECF No. 85.

On March 9, 2018, the Court denied both the administrative motion and the recusal motion. ECF No. 89. The Court explained that "Plaintiffs' core rationale for recusal is that the Court has not ruled in Plaintiffs' favor on motions, but Plaintiffs cite no authority holding that a litigant's disagreement with a Court's ruling is grounds for recusal." *Id.* at 1. The Court also explained that "Plaintiffs have been litigating variations of this same action since at least March 18, 2009, almost nine years. Given this backdrop, the Court does not find that an extension is warranted." *Id.* at 1-2 (citation omitted).

On April 3, 2018, Plaintiffs filed a Certified Affidavit Under 28 U.S.C. § 144 of Bias or Prejudice against the undersigned judge. ECF No. 100.

On April 11, 2018, Bryan Cave LLP and Goldberg filed motions to dismiss and strike the FAC. ECF Nos. 103, 104.

On April 24, 2018, the Court denied the motion for recusal. ECF No. 107. On May 23, 2018, Plaintiffs appealed the order denying recusal by filing a petition for a writ of mandamus in the Ninth Circuit. ECF No. 116.

Also on April 24, 2018, in a 37 page opinion, the Court denied as moot Real Time Resolutions' motion to dismiss and granted JPMorgan's and Dimon and Desola's motions to dismiss. ECF No. 108. Specifically, the Court granted without prejudice Dimon and Desola's motion to dismiss for failure to properly serve Dimon and Desola. The Court dismissed with prejudice as to JPMorgan and SAMI the accounting claim; the FDCPA claim insofar as it was premised on conduct occurring before October 25, 2016; the fraud claims; and the unjust enrichment claim. *Id.* at 35. The Court dismissed with leave to amend the FDCPA claim insofar as it was premised on conduct occurring after October 25, 2016; the Civil RICO claims; the UCC claim; the § 1985(2) claim; and the § 1986 claim. *Id.*

The Court noted that motions to dismiss the FAC filed by other defendants were still pending and not scheduled to be heard until June and October 2018. *Id.* Thus, the Court noted that "any amended complaint will not be due until 30 days after the [C]ourt rules on those motions. If Plaintiffs fail to file an amended complaint within 30 days after the Court rules on all of the currently pending motions to dismiss or fail to cure the deficiencies identified in this order, the claims dismissed in this order will be dismissed with prejudice." *Id.* The Court also noted that "Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court." *Id.*

Despite the fact that the deadline for filing an amended complaint would not be until at least November 2018, Plaintiffs filed the instant SAC on May 2, 2018.[3] ECF No. 109. Based on the filing of the SAC, the Court denied as moot the pending motions to dismiss and stated that it would consolidate the hearings on any future motions to dismiss so that the motions would be heard on the same day. ECF No. 111. The Court also notified Plaintiffs that Plaintiffs may not file any additional complaints without Defendants' written consent or the Court's leave. *Id.* (citing Fed. R. Civ. P. 15(a)).

On May 23, 2018, Bryan Cave and Goldberg filed a motion to dismiss the SAC. ECF No. 115.

On June 4, 2018, Plaintiffs filed the instant motion for a TRO to prevent the foreclosure sale of their home on June 27, 2018. ECF No. 118. That same day, the Court ordered Defendants to file responses to the motion for a TRO by June 11, 2018. ECF No. 125.

On June 4, 2018, JPMorgan filed a motion to dismiss the SAC, ECF 126, and joined Bryan Cave's motion to dismiss (ECF No. 115) in part, ECF No. 127. That same day, SLS filed a motion to dismiss the SAC, ECF No. 129, as did Zieve Brodnax & Steele ("ZBS"), ECF No. 130.

---

[3] Footnote 4 in the SAC suggests Plaintiffs may have been confused about the deadline for filing an amended complaint, insofar as Plaintiffs stated that the Court did not permit them adequate time to amend their complaint and that Plaintiffs were required to "rush this into court today before deadline expires." ECF No. 109 at 50 n.4. As described above, Plaintiffs' deadline to file an amended complaint was not until sometime in November 2018.

9
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

On June 11, 2018, the Defendants filed oppositions to the TRO motion. ECF No. 132 ("JPMorgan Opp'n"); ECF No. 133 ("Bryan Cave Opp'n"); ECF No. 134 ("SLS Opp'n"); ECF No. 135 ("ZBS Opp'n").

On June 13, 2018, Plaintiffs filed an administrative motion requesting additional time to respond to the pending motions to dismiss. ECF No. 136. SLS and Bryan Cave opposed this motion. ECF Nos. 138, 142.

On June 15, 2018, Plaintiffs filed a supplement to their TRO motion requesting that if the Court does not grant their TRO, then the Court allow Plaintiffs to sell their home. ECF No. 140.

On June 21, 2018, Plaintiffs filed a 60 page third amended complaint without stipulation or leave of the Court in which Plaintiffs added new causes of action. ECF No. 144. That same day, the Court denied the administrative motion for an extension of time and struck the third amended complaint. ECF No. 145.

On June 22, 2018, Plaintiffs filed an opposition to the motions to dismiss the SAC. ECF No. 146.

On June 25, 2018, Plaintiffs filed a notice of appeal of the Court's "de facto denial" of the TRO motion and requested that the Ninth Circuit grant an injunction pending appeal. ECF No. 149. The Ninth Circuit denied the motion for injunctive relief on June 26, 2018 and noted that the Ninth Circuit may lack jurisdiction over the appeal because this Court had not entered a final judgment or a decision appealable under the collateral order doctrine. *See Merritt v. JP Morgan Chase Bank NA*, No. 18-16174, ECF No. 6 (9th Cir. June 26, 2018).

## II.     LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). A preliminary injunction is an extraordinary remedy, never granted as a matter of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

10
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1 suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
2 favor, and that an injunction is in the public interest." *Id.* at 20. The party seeking the injunction
3 bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201
4 (9th Cir. 2009). "The Ninth Circuit weighs these factors on a sliding scale, such that where there
5 are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the
6 merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply*
7 in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, --- F.3d ---, 2018
8 WL 3077070, at *3 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d
9 1281, 1291 (9th Cir. 2013)). The issuance of a preliminary injunction is at the discretion of the
10 district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## III. DISCUSSION

As an initial matter, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 633 (9th Cir. 2015). The Ninth Circuit requires that there "be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Id.* at 636. Specifically, there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

In the instant case, Plaintiffs' TRO motion is neither based on the same causes of action or factual allegations as the SAC nor does the TRO motion seek the same character of relief. First, Plaintiffs base their TRO motion on a range of allegations and causes of action not pled in the SAC. Specifically, Plaintiffs assert alleged TILA and RESPA violations and fraud related to the origination of their loan in 2006, alleged servicing errors in applying Plaintiffs' payments to interest rather than principal between 2006 and 2008, Plaintiffs' 2009 loan modification efforts,

11
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1 and Defendants' alleged dual tracking of Plaintiffs' loan modification application in violation of California Civil Code § 2923.11, and violation of California's Rosenthal Act. *See* ECF No. 119 at 2-6, 8-11, 13.

However, the SAC does not contain causes of action for violations of TILA, RESPA, the Rosenthal Act, or California Civil Code § 2923.11. *See* SAC at 45-53. Moreover, Plaintiffs previously stressed that the instant suit "does not seek, *in any way*, relief for the alleged fraudulent 2006 origination, servicing or 2009 modification of loans." FAC, ECF No. 29 at ¶ 2. Instead, Plaintiffs explained that the instant action is related to an alleged conspiracy to illegally collect debt from Plaintiffs and is "solely based on events that take place from 2010 to 2017, which are well beyond the scope of the allegations that [are] being litigated before the 9th Circuit and [California Court of Appeal]." *Id.* ¶ 3. Thus, the TRO motion primarily is not based on the same causes of action as the SAC.

Similarly, Plaintiffs' TRO motion seeks different relief than the relief sought in the SAC. The TRO motion seeks the following forms of injunctive relief: (1) to prohibit Defendants from any debt collection on the loan at issue in this case; (2) to prohibit Defendants from pursuing any foreclosure activity until the Ninth Circuit and California Court of Appeal rule on Plaintiffs' pending appeals in other cases; (3) to prohibit Defendants from pursuing any foreclosure activity and to cancel the pending notice of sale until Plaintiffs' FDCPA claims can be adjudicated; (4) to prohibit Defendants from pursuing foreclosure while Plaintiffs' loan modification application is pending ("dual tracking"); (5) to direct Defendants to comply with state and federal regulations about negotiating modification of Plaintiffs' loan; and (6) to direct Defendants to stop all foreclosure activities and to modify Plaintiffs' loan. ECF No. 118.

However, the types of relief sought in Plaintiffs' SAC are (1) an accounting; (2) general and special damages; (3) punitive damages; and (4) declaratory relief that Defendants' practices violate the FDCPA and RICO. *See* SAC at 53. In other words, the TRO seeks to stop the foreclosure sale of Plaintiffs' home and also seeks a modification of Plaintiffs' loan, whereas the SAC seeks damages related to allegedly unlawful loan collection practices.

Thus, under *Pacific Radiation Oncology*, 810 F.3d 631, there is not a sufficient relationship between the causes of action in the TRO motion and the causes of action in the SAC. *See id.* at 636-37; *see also Chung v. NBGI, Inc.*, No. CV 09-4878 MHP, 2010 WL 841297, at *2 (N.D. Cal. Mar. 10, 2010) ("A preliminary injunction is generally only available if injunctive relief is appropriate in the first instance."). Thus, the Court does not have the authority to issue a TRO based on the causes of action not alleged in the SAC.

In addition, to the extent that Plaintiffs seek a TRO to prevent the sale of their home until the California Court of Appeal or the Ninth Circuit rule on Plaintiffs' pending appeals in other cases, the California Court of Appeal and the Ninth Circuit would be the proper courts from which to seek injunctive relief through a motion for a TRO or preliminary injunction filed on the dockets in those pending cases. This Court lacks authority to enjoin Defendants' actions pending developments in other cases being heard by other courts. *Cf. Pacific Radiation Oncology*, 810 F.3d at 633 ("A court's equitable power lies only over the merits of the case or controversy before it.").

Accordingly, the Court proceeds to analyze the TRO motion insofar as the TRO motion is based on the causes of action and factual allegations pled in the SAC.[4]

**A. Analysis of *Winter* Factors**

With respect to irreparable harm, "the Court recognizes that loss of one's home may constitute irreparable harm." *Kimball v. BAC Home Loans Servicing, LP*, No. 10-CV-5670-LHK, 2011 WL 577418, at *2 (N.D. Cal. Feb. 9, 2011); *see Diaz v. Wells Fargo Bank, N.A.*, No. 13-CV-4915-LHK, 2013 WL 6172648, at *3 (N.D. Cal. Nov. 25, 2013) (same). However, if Plaintiffs fail to carry their burden to establish a likelihood of success on the merits or serious questions

---

[4] The Court notes that it appears to be unsettled in the Ninth Circuit whether injunctive relief is available under the FDCPA. *Compare Irwin v. Mascott*, 370 F.3d 924, 928, 931 (9th Cir. 2004) (upholding contempt order for violation of injunction based on FDCPA but clarifying that the Ninth Circuit was not reviewing the merits of the underlying injunction), *with Curten v. Quality Loan Serv. Corp.*, 2015 WL 12696215, at *3 (C.D. Cal. Mar. 16, 2015) (holding that injunctive relief is not available under the FDCPA). The Court need not decide this issue because Plaintiffs have failed to establish a likelihood of success on the merits in any event.

going to the merits of their claims, the Court cannot grant a TRO. *See Diaz*, 2013 WL 6172648 at *3. Thus, the Court turns to likelihood of success on the merits.

Plaintiffs argue that they have shown a likelihood of success on the merits of their FDCPA cause of action "if nothing else." Mot. at 8. The majority of Plaintiffs' discussion in the TRO motion under the heading related to the FDCPA focuses instead on TILA and RESPA—causes of action that Plaintiffs do not assert in the SAC. *See id.* at 8-11. Even taking the FDCPA-related allegations of the SAC into account, however, Plaintiffs have failed to establish serious questions going to the merits or a likelihood of success on the merits on their FDCPA claim.

Specifically, the Court previously dismissed with prejudice the FDCPA claim insofar as it was premised on conduct occurring before October 25, 2016. The Court dismissed with leave to amend the claim insofar as it was premised on conduct occurring after October 25, 2016 because the Court found that Plaintiffs failed to allege that JPMorgan or SAMI are "debt collectors" within the meaning of the FDCPA. ECF No. 108 at 20-21, 35. Specifically, Plaintiffs did not allege that the principal purpose of either JPMorgan or SAMI is debt collection. *Id.* at 21-22. Plaintiffs have failed to cure this deficiency in the SAC. *See* SAC ¶¶ 314-27. In addition, Plaintiffs' FDCPA theory appears to be premised on the assertion that Defendants lacked authority to collect the debt based on defects in the securitization or assignment of their deed of trust. *See id.* However, as the Court previously explained, Plaintiffs' allegations would only establish that the assignment of their deed of trust is voidable, not void. *See* ECF No. 108 at 27-29 (citing *In re Turner*, 859 F.3d 1145, 1149 (9th Cir. 2017); *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016); *Liao v. New Penn Fin.*, LLC, 2018 WL 1061718, at *6 (Cal. Ct. App. Feb. 27, 2018); *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 811 (2016)). Because beneficiaries of a voidable assignment can ratify the assignment, the Court concluded that Plaintiffs' attack on the validity of the assignment failed as a matter of law. *Id.* Nothing in the SAC changes this conclusion. The Court thus concludes that Plaintiffs have not established a likelihood of success or serious questions going to the merits of their FDCPA claim because Plaintiffs' FDCPA claim fails for multiple reasons.

Plaintiffs also argue in the TRO motion that Defendants lack standing to foreclose, apparently based on the same defective assignment theory. *See* Mot. at 14-15. Even setting aside that no causes of action in the SAC explicitly challenge Defendants' right to foreclose, this argument fails for the same reason explained above—the defective assignment that Plaintiffs allege in the SAC would render the assignment voidable, not void, and Defendants could ratify the assignment. Moreover, California courts have held that a borrower cannot preemptively challenge a beneficiary's standing to foreclose. *See Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (2013), *overruled on other grounds by Yvanova*, 62 Cal. 4th at 934 ("This aspect of *Jenkins*, disallowing the use of a lawsuit to preempt a nonjudicial foreclosure, is not within the scope of our review, which is limited to a borrower's standing to challenge an assignment in an action seeking remedies for wrongful foreclosure.").

Plaintiffs' TRO motion does not address Plaintiffs' likelihood of success on the merits of their other causes of action, although Plaintiffs contend that "the complaint itself does demonstrate serious questions in the likelihood of success" on the "fraud, RICO and other claims." Mot. at 15. Such a conclusory assertion is not sufficient to carry Plaintiffs' burden. In any event, the Court's independent review of the SAC shows that either Plaintiffs' other claims were previously dismissed with prejudice (claims for accounting, unjust enrichment, and fraud), Plaintiffs have failed to cure the deficiencies identified in the Court's previous order, ECF No. 108, or the claims are not sufficiently related to the injunctive relief that Plaintiffs seek. Accordingly, the Court finds that Plaintiffs have not established either a likelihood of success on the merits or serious questions that go to the merits of their claims. Although the Court could deny the TRO motion based on the failure to establish likelihood of success on the merits, the Court nonetheless examines the remaining factors for the sake of completeness. *See Short*, 2018 WL 3077070 at *6 ("The appellants have not shown serious questions going to the merits of their constitutional claim. It follows that denying the request for an injunction was not an abuse of discretion."); *Kimball*, 2011 WL 577418, at *2 (denying TRO motion after concluding that Plaintiffs failed to establish a likelihood of success on the merits).

15
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

The Court finds that the balance of equities does not favor a TRO. There is no dispute that Plaintiffs have occupied the property for almost ten years without making any payments on the note. The Court has found that the balance of equities did not favor injunctive relief in instances where plaintiffs had occupied a property without paying for far shorter periods of time. *See Perry v. Nat'l Default Servicing Corp.*, 2010 WL 3325623, at *6 (N.D. Cal. Aug. 20, 2010) (finding balance of equities did not favor an injunction where plaintiffs had occupied a property without making payments for more than two years); *Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-1344-LHK, 2013 WL 3789808, at *7 (N.D. Cal. July 16, 2013) (finding balance of equities tipped heavily in favor of defendant where plaintiff had resided at property rent-free for more than three years); *see also Gillies v. JPMorgan Chase Bank, N.A.*, 7 Cal. App. 5th 907, 909 (2017) ("Nonpayment of the mortgage for approximately eight years while the borrower remains in possession is an egregious abuse. Respondent argued, and the trial court agreed, that appellant is 'gaming the system.' The game is over.").

Similarly, with respect to the public interest, the Court finds that the public interest is not served by allowing Plaintiffs to continue living in their home without payment. Nor is the public interest served by prohibiting Defendants from proceeding with the foreclosure sale, the facts underlying which Plaintiffs have vigorously challenged in two different cases in both state and federal trial and appellate courts. *See Perry*, 2010 WL 3325623 at *6 ("Similarly the public interest would not be served by prohibiting Kondaur from proceeding with the foreclosure sale, as it is entitled to do.").

Thus, the Court concludes that a TRO is not appropriate in this case after balancing all four *Winter* factors.

Finally, to the extent that Plaintiffs request that the Court permit them to sell their house if the Court denies a TRO, Plaintiffs do not cite any support for the proposition that the Court would have such authority, nor is the Court aware of any.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a TRO is DENIED.

16
Case No. 17-CV-06101-LHK
ORDER DENYING EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

**IT IS SO ORDERED.**

Dated: June 26, 2018

_____
LUCY H. KOH
United States District Judge